# PETERSON et al. v. PETERSON et al.

No. 6606.   Decided October 11, 1943.   (141 P. 2d 882.)

*J. D. Skeen* and *E. J. Skeen,* both of Salt Lake City, for appellants.

*Leon Fonnesbeck* and *L. Tom Perry,* both of Logan, for respondents.

WOLFE, Chief Justice.

On June 3, 1942, the plaintiffs instituted this action charging John Charles Peterson and Leon Fonnesbeck with breach of trust and fraud, and prayed for a decree impressing certain described real estate with a trust and for an accounting. Wallace Hurd and Bentley Mitchell, who were alleged to be grantees of the other defendants, were also made defendants. After plaintiffs rested their case, each defendant made a motion for a nonsuit, which separate motions were granted as to all defendants. Plaintiffs appeal.

Counsel for plaintiffs stated that he would not resist the motion for non-suit made by defendants Mitchell and Hurd. This was tantamount to a stipulation that the motion for non-suit might be granted as to them. Therefore, the order as to them will not be set aside on appeal. ■ *Thero* v. *Franklin,* 48 Utah 587, 160 P. 1188; Bancroft's Code Pleading and Practice, Vol. 1, page 64.

In the complaint, plaintiffs allege that Anton L. Peterson died on May 6, 1930, that defendant John Charles Peterson was appointed administrator on June 28, 1932, and that when Elizabeth Ann Peterson, surviving widow of Anton,

died in January, 1937 plaintiff Golden Peterson was appointed administrator of her estate. It was further alleged that for many years prior to 1930, Anton L. Peterson, Golden Peterson, Leondo Peterson, and John Charles Peterson conducted a business as a partnership at Snowville; that they acquired partnership property which was put in the name of the father, Anton. At the time of Anton's death part of this real property was involved in litigation with one Worley who claimed ownership of said property. Another tract of this land was involved in litigation with one Davis, who sued as administrator of the Estate of Verulan Dives to foreclose a mortgage on said property. Charles, as administrator of Anton's estate, was substituted as party defendant in both of these proceedings. The suit brought by Worley was by stipulation dismissed in 1933; the suit brought by Davis culminated in 1936 in a judgment of foreclosure and the land was sold subject to a right of redemption.

It is also alleged that defendant Fonnesbeck appeared as counsel for John Charles Peterson in the matter of the estate of Anton in May, 1935; that the inventory filed for that estate was based upon false appraisements at considerably below true value; that Charles filed a final account showing money received as $466 advanced by him and showing expenditures for funeral expenses and expenses of last sickness of $466 when in truth the expenses of the last sickness of deceased and funeral expenses were in a large measure paid by the plaintiffs out of partnership funds. In 1935, Charles represented to plaintiffs that because of the litigation involving the land left by Anton "such land could not be saved for the benefit of the estate and the heirs of said deceased, unless the heirs transferred their interest" to him, as administrator; that he would hold the property for the benefit of Elizabeth Ann Peterson for life with a remainder over to the heirs of Anton and Elizabeth Ann; that the plaintiffs because of the fact that Charles was their brother and because of their long dealings with him

in the partnership, relied upon said representations and signed quitclaim deeds to Charles. It is also alleged that Charles asked for and obtained from Golden the sum of $300 stating that it would be used to assist in the redemption of the land sold in the foreclosure suit brought by Davis, and that Golden also gave him $35 and other sums of money for attorney's fees and expense money to assist in the settlement of said estate.

It is further alleged that in the proceedings for probating the estate of Anton, Charles and Fonnesbeck represented to the probate court that the plaintiffs had quit claimed their interest in one tract of land to Charles and that he had conveye it to Fonnesbeck; that plaintiffs had assigned their interest in the "home property" to their mother, Elizabeth Ann; and that they had quit claimed a third tract of land to Charles; that because of their trust in Charles, plaintiffs made no appearance in the probate proceeding for the estate of Anton; that they procured no copy of the petition for final distribution and did not learn that Charles claimed the absolute ownership of any of this property until May, 1941, nor did they learn of the decree of distribution conveying the land to Fonnesbeck until said date.

Plaintiffs prayed that Charles be adjudged to hold the land still held by him in trust for the heirs of Anton's estate, that Fonnesbeck and Mitchell be adjudged to hold in trust the land conveyed to Fonnesbeck and by Fonnesbeck conveyed to Mitchell; and that Charles and Fonnesbeck both be required to make an accounting of all moneys and properties received from plaintiffs.

The pleadings and the evidence show that plaintiffs seek to impress a trust upon four separate tracts of land. One tract consisted of the home property of Anton, part of which his surviving widow had been occupying as a homestead. Plaintiffs all signed a quit claim deed to her. After her death the land went to the plaintiffs and her other heirs. Plaintiffs stated that they now claim no further in-

terest as against the defendants in regard to this land. The remaining portion of this home property is claimed by Charles. Golden testified that Anton and his wife had conveyed this land to Charles and that he, Golden, did not deny that Charles owned this portion of the home tract.

A second tract consisted of 160 acres in Hancel Valley which at the time of the trial was in the hands of defendant Mitchell. A third tract at the time of trial was held by Defendant Hurd. In view of the fact that plaintiffs agreed that a nonsuit might be granted as to Mitchell and Hurd, they are now precluded from asserting any interest in that land.

The fourth tract consisted of 40 acres upon which Verulan Dives had held a mortgage. In 1935 Charles obtained a quit claim deed to this land from each of the plaintiffs. Each of the plaintiffs testified that Charles had told them that the land could not be saved unless they deeded it to him so that he could clear up Anton's estate and hold the land for the benefit of the plaintiffs and other heirs of Anton's estate. In 1936 the Dives mortgage was foreclosed and the land was sold to Dives' administrator, Davis. On April 10, 1937, Davis assigned his interest to Maria Peterson, wife of Charles, and in September 1937 after Charles failed to redeem the land, a sheriff's deed issued to Maria. Golden testified that in May 1937, Charles obtained $300 from him by representing that it was to be used to redeem this land, notwithstanding the fact that Maria had purchased this land some 30 days prior to this date.

On cross-examination, Golden admitted that in the prior foreclosure suit he had testified that this 40 acre tract belonged to Charles and did not belong to Anton's estate. Elizabeth Ann, wife of Anton, by deposition in the mortgage foreclosure suit, testified that this property belonged to her son Charles and not to Anton. In the face of this testimony we cannot hold that the trial court erred in refusing to impress this land with a trust.

This disposes of the issue of the case relating to the prayer that any of this land be impressed with a trust for the benefit of the plaintiffs. We turn now to those matters relating to an accounting.

In regard to the tract of land referred to above which is now held by defendant Mitchell, each of the plaintiffs testified that he had executed a quit claim deed of his interest in this land to Charles and that Charles agreed to hold it for plaintiffs' benefit. Charles sold ■ the land to Fonnesbeck for $2,700 and the probate court in the Matter of Anton's estate distributed the land to Fonnesbeck in 1935. Several years later, Fonnesbeck transferred the land to Mitchell. There is no proof whatsoever that Fonnesbeck had any notice of the previous transactions showing that Charles only got a limited interest in the land—there is nothing to show fraud or a breach of trust on the part of Fonnesbeck. But there is evidence that Charles collected $2,700 from the sale of lands which it is claimed he held in trust. In addition it appears that he procured $300 from Golden upon his representation that he was going to use it to redeem the Dives Mortgage. The testimony shows that various other sums were advanced by Golden. Certainly these allegations and the proof were sufficient to get plaintiffs past a motion for a nonsuit insofar as Charles was concerned, and, if not rebutted, it would be sufficient to show that they were entitled to an accounting.

In defense Charles urges that this evidence adduced to show that the quit claim deed was given in trust was incompetent in that it was an attempt to vary the terms of a written instrument by parol evidence. It is, however, almost universally held that a deed absolute ■ on its face can be shown to have been intended to be in trust. In *Corey* v. *Roberts*, 82 Utah 445, 25 P. 2d 940, 946, this court stated, quoting from *Peugh* v. *Davis*, 96 U. S. 332, 336, 24 L. Ed. 775:

" 'It is an established doctrine that a court of equity will treat a deed, absolute in form, as a mortgage, when it is executed as a security for a loan of money. * * * As the equity, upon which the court acts in such cases, arises from the real character of the transaction, any evidence, written or oral, tending to show this is admissible. * * *' "

See also Williston on Contracts, Rev. Ed. Vol. 3, sec. 635; Wigmore on Evidence, Third Ed., Vol. IX, Sec. 2437; *In re Gaines' Estate*, 15 Cal. 2d 255, 100 P. 2d 1055.

In Scott on Trusts, Vol. I, Sec. 44.2, it is stated:

"There are numerous cases to the effect that where at the time of the transfer the transferee was in a confidential relation to the transferor, and the transferor relied upon his oral promise to reconvey the land, he is chargeable as constructive trustee of the land for the transferor." citing many cases.

Lastly, Charles urges that the various claims set up by the plaintiffs are barred by the statute of limitations. With this we are unable to agree. Plaintiffs testified that they first got notice of this alleged fraud in 1941 when Charles for the first time asserted that plaintiffs had no interest in any of the property. Charles contends that plaintiffs had notice of the alleged fraud or breach of trust as early as 1935 when he recorded their quit claim deed. But what was there in the recording of that deed which would give plaintiffs notice that he had breached his trust? Such recordation was entirely consistent with the intent of all concerned for they intended to put title into Charles so that he could, according to their theory, take the necessary steps to save the land. The same is true as to the probate decree entered in the matter of the Estate of Anton Peterson. The recitals in the "Petition for Distribution of Estate" filed in the Matter of the Estate of Anton Peterson regarding the transfer to Fonnesbeck of any "right, title and interest the heirs of Anton might have in Section 12, Township 13 North, Range 7 West, of the Salt Lake Meridian," even if sufficient to put plaintiffs on notice that Charles had sold this land to Fonnesbeck, was hardly sufficient to put them on notice that he intended

to claim the $2,700 for his own benefit to the exclusion of the plaintiffs. This is particularly true where it also appears that Charles, who was to manage this property and attempt to save it for heirs of Anton, obtained money from Golden in 1937 and 1938 under the pretense that he was still attempting to settle this estate and save the property. The plaintiffs have made out a prima facie case for an accounting as against Charles. The order of the court granting a non-suit as to Fonnesbeck, Mitchell, Hurd and Maria Peterson was correct and is hereby affirmed. The order insofar as it relates to Charles is reversed. Fonnesbeck, Mitchell, Hurd and Maria Peterson to have their costs from plaintiffs. Plaintiffs to recover one-fifth of their costs from Charles.

LARSON, McDONOUGH, MOFFAT and WADE, JJ., concur.