PETERSON et al. v. PETERSON et al.

No. 7056. Decided March 2, 1948. (189 P. 2d 135.)

See 65 C. J., Trusts, sec. 923. Right of parties under oral agreement to buy land or bid it in at judicial sale for another, see note, 54 A. L. R. 1195. See, also, 54 Am. Jur. 209.

*J. D. Skeen* and *E. J. Skeen,* both of Salt Lake City, for appellants.

*Leon Fonnesbeck,* of Logan, for respondents.

LATIMER, Justice.

This is the second time this controversy has been before this court. In our original decision reported in 105 Utah 133, 141 P. 2d 882, we held that plaintiff had made out a

prima facie case for an accounting for trust funds as against John Charles Peterson.

The trial court, after receipt of remittitur set the matter for further hearing, and after finding that defendant's evidence substantiated that previously given by the plaintiff, ordered John Charles Peterson to account for the trust money received. In the hearings on this accounting it developed that certain of the trust funds, to wit, $1,700, had been used by John Charles Peterson to redeem one tract of land from a foreclosure sale. The tract of land redeemed was mentioned in the original complaint, and is particularly described as follows: The southwest quarter of the northwest quarter of Section 2, Township 14 North, Range 8 West, Salt Lake Meridian.

When repurchased, title to this property was not taken in the name of John Charles Peterson, but in the name of defendant Maria Peterson, his wife. After development of these facts plaintiff, on the 2nd day of May, 1944, filed an amended complaint against Maria Peterson seeking to impress a trust on the property. Some five months later a second amended and supplemental complaint was filed alleging that Maria Peterson had conveyed the property to her son, Lavar Peterson, who had knowledge of the trust, had not paid a fair price for the property, and was not a bona fide purchaser for value without notice of the claims of plaintiffs. In this latter complaint the relief sought was to have the deed from defendant Maria Peterson to defendant Lavar Peterson declared null and void.

Before referring to the facts in the present proceeding, we dispose of the contention made by respondent that the trial judge erred in the orders and judgment he entered in the accounting proceedings. In view of the fact that no appeal, cross-appeal, or cross-assignment of error from the orders and judgment made by the trial court have been taken or assigned by respondents, these matters are not properly before us. If, as respondent contends, all of the evidence on the accounting is not included in the bill of exceptions, this should have been corrected in the court

below. No contention is made that all the evidence on the question we now decide, that was before the trial court, is not included in the record.

The facts upon which the judgment for accounting is based can be found in our previous decision. We refer only to those facts which have some relevancy to the question under consideration.

The original action was commenced against John Charles Peterson by serving him with summons on the 4th day of June, 1942. Leon Fonnesbeck, an attorney at law, was a defendant in the original action and so was familiar with many of the facts out of which the original controversy arose. He was served with summons on the 11th day of June, 1942, a short time after he had met with and advised John Charles, Maria, and Lavar Peterson on the details of transferring the property to Lavar Peterson. In the original complaint plaintiffs alleged that the tract of land herein involved, together with others, were held in trust by John Charles Peterson, and prayed for judgment of the court that he be decided to be so holding the lands. That action came on for trial on the 9th day of November, 1942, and on the 18th day of November, 1942, the trial court entered judgment sustaining defendant's motion for nonsuit. Plaintiffs subsequently appealed from this judgment, and on December 1, 1943, this court reversed the trial court as to the dismissal of plaintiff's suit against John Charles Peterson. The dates of these proceedings are important only insofar as they blend in with the acts and conduct of the individual defendants, in their dealings with the property.

The land involved in this controversy has the following history insofar as material to this action. In 1936, William E. Davis, administrator of the estate of Verulan Dives, commenced an action to foreclose a mortgage on the property. This action proceeded to judgment, the property was sold at a sheriff's sale to William E. Davis, as administrator, for the sum of $2,700. On the 10th day of April, 1937, said William E. Davis, as administrator, sold the certificate of sale to Maria Peterson, wife of John Charles Peterson and

on the 18th day of December, 1937, the sheriff executed a sheriff's deed to Maria Peterson. The title remained in the name of Maria Peterson until the 18th day of May, 1942, at which time the title was transferred to defendant Lavar Peterson, son of defendants John Charles Peterson and Maria Peterson.

The court found, and there is evidence in the record to sustain the finding, that the $2,700 which John Charles Peterson was required to account for, was obtained from Leon Fonnesbeck as consideration for the purchase of certain other lands involved in the original action. One thousand seven hundred dollars of this money was paid to the sheriff by Fonnesbeck to redeem the property involved. According to the evidence, this was at the solicitation of Maria Peterson, and with the consent of John Charles Peterson. The record is sufficient to indicate that Maria Peterson knew the source of the money, and the record is silent as to why the title was taken in her name without her having given any adequate consideration for the transfer. Testimony and subsequent dealings by the Petersons, John Charles, Maria, and Lavar, indicate an acknowledgement that, until the property was purchased by Lavar, John Charles was the principal party claiming the land.

Passing now to the circumstances of the sale to Lavar Peterson: According to his testimony, prior to the execution of the deed he had discussed with his father the difficulty that was being encountered by the father in connection with the claims of other heirs of Anton Peterson, Lavar's grandfather. Approximately two weeks before summons was served on his father the title to the property was conveyed to Lavar. In order to accomplish this transfer, on the 18th day of May, 1942, John Charles Peterson, Maria Peterson and Lavar Peterson, all of whom resided together as a family, left Salt Lake City and travelled together to Logan, Utah, where they consulted with Fonnesbeck regarding the transfer. It was agreed that the property would be transferred to Lavar for a consideration of $1,500. Mrs. Peterson testified Fonnesbeck set the price, while

Lavar testified he believed he, Lavar, did. The consideration for the transfer of the land was a five-year promissory note signed by Lavar for $1,500, payable at the rate of $25 per month. It is significant to note that the monthly payment was the sum that Lavar testified he had been regularly paying for room and board. At this time it is a fair inference that the three Petersons were apprised of the fact that suit was about to be instituted, as prior to the trip there had been previous conversations between them with other close relatives who later became plaintiffs in this litigation.

At the time of the execution of the note, no payment of money was made, the sole consideration being the note. The amount of the note was $200 less than the amount of the trust money used in 1937 to redeem the property from foreclosure proceedings. No payments, monthly or otherwise, were made on the note until almost a year later, and then, according to the findings, on May 2, 1943, the sum of $140 was paid. Prior to the time this payment was made the original trial had been held, Lavar was in attendance and, while apparently not called as a witness, he heard the evidence and proceedings. No further payments were made by him until December, 1943. During this month, the court found that Lavar made two payments, one in the amount of $600 and the other in the amount of $650. The date of payment of the $650, as found by the court, is clearly in error as the check offered in evidence bears the date of October 7, 1944. Regardless of the inaccuracy of the findings in this regard, these payments were made after this court on December 1, 1943, held that John Charles Peterson must account for the money received. The court further found that on subsequent dates not given in the findings, Lavar paid $306. A check offered in evidence to substantiate this payment bears date of October 14, 1944. The check for $650 was cashed the day before suit was started against Lavar Peterson, and the check for $306 was cashed three days later. Suit against the mother Maria Peterson was com-

menced in May of 1944, and lis pendens was filed May 20, 1944.

While the record sustains the trial court's finding that Lavar Peterson paid slightly in excess of $1,500 to his mother, this does not make him a bona fide purchaser for value. The evidence established that John Charles Peterson obtained $2,700 in cash that he held in trust for his brothers and sisters. Of this money $1,700 was invested in the redemption of the property involved in this suit, and this property was redeemed in the name of Maria Peterson. The court's finding that the trust money was used to repurchase the property would permit the plaintiffs to follow the property through its change in form. Maria Peterson would accordingly hold the property in trust for the plaintiffs, and unless Lavar obtained greater or additional rights against the plaintiff, the judgment cannot be sustained.

The most difficult question to dispose of is whether the trial court was in error in finding that Lavar Peterson was a bona fide purchaser for value and cut off the plaintiffs' right to pursue the property. While we give consideration to the findings of the trial court, this is an equitable proceeding and we are permitted to review both questions of law and fact. We will, however, not disturb the findings of fact unless it appears that the trial judge made findings against the weight of the evidence.

The general rule in regard to the rights of beneficiaries to reclaim trust property is stated in 54 American Jurisprudence, Trusts, Par. 266:

"The right of a beneficiary of a trust to reclaim trust property in the hands of a third person or to charge such third person as a constructive trustee is primarily a question of the status of such third person as a bona fide purchaser for value and without notice. Equities of the beneficiary of a trust in the property or funds of the trust are cut off by the trustee's alienation or encumbrance of such trust property or funds to a purchaser for value and in good faith who has no actual or constructive notice of any breach of trust in the alienation or encumbrance, although this does not, of course, deprive the beneficiary of his remedies of enforcing the trust against the proceeds

in the hands of the trustee or against the trustee personally. But to be so protected the purchaser must be both a purchaser for value and a purchaser in good faith, and without notice. Equities are cut off only to the extent that a person taking trust property or funds in good faith has given value.

"One who acquires trust property with notice of the breach of trust or who is for any other reason not a purchaser in good faith is not protected as against equities of the beneficiary, but takes the property or funds charged or impressed with the trust, notwithstanding he gives full value in the transaction. On the other hand, one who has taken in good faith and without notice of any breach of trust is not protected if he gave no value. The purchaser, to be protected, must be a bona fide purchaser, not only at the time of the contract or conveyance, but until the purchase money is actually paid."

Good faith of one taking trust property is dependent upon having no notice, actual or constructive, of any breach of trust in the transaction, and of having made such inquiry as the law would impose upon the purchaser ▪ under the facts of the particular case. Conceding that Lavar Peterson testified he purchased in good faith, we have the following facts and circumstances which we believe sufficient to cast upon him the burden of inquiring into the rights of ownership of his father and mother before paying out the sums he claims to have paid.

Prior to both the execution of the deed and the commencement of the original action, Lavar had heard conversations between his father and Golden Peterson about the claims of other heirs of his grandfather. Just prior to suit being instituted, he drove his father and mother to Logan, Utah, a distance of some 90 miles, for the purpose of having the property deeded to him. The matter was discussed with, and the transfer was handled by Fonnesbeck, who was familiar with the fact that the money used to redeem the property was money obtained from the sale of other property which the plaintiffs claimed an interest in. A deed was executed to Lavar by his mother, and the consideration was a promissory note payable in five years, and at the rate of $25 per month. No money was paid at the time, and none was due for 30 days. Shortly after this meeting in Logan,

and before any money was due or had been paid, plaintiffs instituted a suit against the father, John Charles Peterson, and in this suit, plaintiffs sought to impress the property with a trust. Lavar discussed this suit with his father, does not deny he read the complaint, and attended the trial of the action. His attendance at the trial was some six months before the first payment was made. In spite of the facts that monthly payments were called for by the terms of the note, no payment was made until some eleven months after the first payment was due. The second payment was not made until after this court reversed the judgment of the trial court and held that John Charles Peterson was bound to account for a sum of $2,700. The last two payments in the sums of $650 and $306 were paid by Lavar some five months after a supplemental complaint had been filed against his mother, and a lis pendens had been filed against the property. The check for $650 was cashed one day before Lavar was sued, and the one for $306 was cashed two days afterwards. Payments made under such circumstances can hardly be characterized as having been made in good faith or as having been made without knowledge of equitable interest of others in the property.

While Lavar claims not to have had actual knowledge, this seems almost inconceivable under his own admissions. Even were we bound to accept his bald statement to this effect, we are not precluded from determining whether he is charged with constructive notice. During a five-month period prior to his making the last two payments, he was charged with constructive notice because of the lis pendens. As to the previous payments there is evidence strongly indicating that he was well aware of and discussed with his father not only the litigation but also the issues involved. There were certain transactions, relationships, and things existing between Lavar and his parents which beget a presumption so strong of actual knowledge that we hold the knowledge to have existed because it is highly improbable it did not.

On the eve of a lawsuit, we have a conveyance made from mother to son not for any immediate consideration, but based on payments in the future. The record title was passed, but there was no change in occupancy. No down payment was made on the purchase price, no security was given to guarantee the note, and no payments were made on the note for over one year after execution. No reasons were given by the defendants for the necessity of making a conveyance at that time. There was knowledge of and participating in litigation by Lavar before any payments had been made, and all parties were living closely together as parents and child in the same home.

It is generally held that a transfer or mortgage of property between near relatives which is calculated to prevent creditors from realizing on their claims is subject to rigid scrutiny. See *Paxton* v. *Paxton,* 80 Utah ■ 540, 15 P. 2d 1051. While this rule was applied in that case to past due indebtedness the principle is applicable to this case.

Here the consideration was the execution of a promissory note. The indebtedness could be enforced or forgiven at the whim of the parents. The parties as a family unit had it within their power to forgive and forget, as they chose. The mere execution or delivery of the note by ■ Lavar did not make him a bona fide purchaser for value so long as the note remained in possession of his mother. The note was never negotiated by her, so that Lavar would have had a defense to any action on the note brought by his mother in the event she had no interest to convey. A large portion of the money advanced by Lavar was according to his testimony, used in remodeling the house wherein the family resided, so that all three parties involved in the attempt to retain the property benefited from the expenditures. One need not scrutinize this transaction closely to determine that in its inception the transfer to Lavar was to remove the property one step further away from the creditors. The subsequent payments were an at-

tempt to stamp the original transaction with authenticity and good faith.

Under the facts of this case we hold all payments made by Lavar were made with notice of the claims of the plaintiffs. Restatement of the Law, Restitution, page 707, makes the following statement concerning notice:

"(a) A person has notice of facts giving rise to a constructive trust not only when he knows them, but also when he should know them; that is when he knows facts which would lead a reasonably intelligent and diligent person to inquire whether there are circumstances which would give rise to a constructive trust, and if such inquiry when pursued with reasonable intelligence and diligence would give him knowledge or reason to know of such circumstances."

Lavar's testimony that he heard his uncle and father discuss their disputes over the property, his admission that when his father was originally served that he discussed the pending litigation with the father, his uncertainty as to whether or not he read the complaint, his attendance at the original hearing, his inspection of the sheriff's deed to his mother to determine its legality and sufficiency, and his every-day living with the litigation would lead a reasonably intelligent person to inquire whether there was a constructive trust and would apprise such a person that he was purchasing property subject to equitable interests.

Appellants contend the judgment as entered should not run in favor of the individual plaintiffs but should be in favor of the administrator of the estate. With this contention we cannot agree. The various complaints alleged that defendant John Charles Peterson held the property in trust for his mother during her lifetime, and then for the benefit of her heirs. Being required to account for trust funds, which were being held for designated beneficiaries the right of action would run to the beneficiaries of the trust and not to the administrator of either

the father's or mother's estate. See *Powell, Adm'r* v. *Powell,* 112 Utah 418, 188 P. 2d 736.

The judgment is reversed with directions to the trial court to enter judgment in conformity with this opinion.

McDONOUGH, C. J., and PRATT, WADE and WOLFE, JJ., concur.