## HAWS et al. v. JENSEN.

No. 7267.  Decided August 18, 1949.  (209 P. 2d 229.)

See 65 C. J., Trusts, sec. 226. Constructive trust as within statute of frauds, see note, 42 A. L. R. 28. See, also, 54 Am. Jur. 180.

*Newell G. Daines,* Logan, *L. Delos Daines,* Salt Lake City, *Clinton D. Vernon,* Salt Lake City, for appellant.

*Bullen & Bell,* Logan, *LeRoy B. Young,* Ogden, for respondents.

WOLFE, Justice.

Action by the respondents, plaintiffs below, to impress a trust upon certain real property situated in Hyrum, Cache County, Utah, standing on the record in the name of John P. Jensen, defendant below. The parties will be referred to as they appeared in the lower court.

Mrs. Maria A. Haws on August 18, 1927, executed a warranty deed to her home in Hyrum, the property here in question, to Amber Haws, her daughter. Mrs. Haws was then residing upon the property; Amber was unmarried and living in Los Angeles, California. On December 2, 1933, the deed was recorded in Cache County by Lucinda Haws Ballam, a daughter of Mrs. Haws and a sister of Amber, at

the direction of Mrs. Haws. There is no evidence that Amber had any knowledge of the existence of the deed until sometime after its recordation. Mrs. Haws continued to live upon the premises until her death on March 24, 1939. Fifteen days thereafter, Amber married the defendant Jensen and they took up residence in the Haws home. On March 16, 1945, Amber died. The defendant continued to reside upon the property and in his petition for letters of administration of the estate of his deceased wife, he listed the property as an asset of the estate. He alleged that he was the sole heir at law of his wife. On March 19, 1947, the property was distributed to him in fee simple. The same day, the plaintiffs, four of whom are brothers and sisters of Amber, and two of whom are children of Noble Haws, a brother of Amber who died in 1940, instituted the present action against the defendant. They alleged in their complaint that while the deed executed by Mrs. Haws to Amber in 1927 was in form a warranty deed, it was intended to create an oral trust; that the terms of the oral trust provided that Amber should maintain the property as a family home to be used by Mrs. Haws and/or by the children of Mrs. Haws, or children of said children for so long as any of the said persons should need a home with complete discretion in the trustee as to the time and as to which of the said persons should use the property; that shortly after the recordation of the deed, Amber accepted the trust and proceeded to perform and carry out the terms thereof in accordance with the intention of Mrs. Haws until the death of Amber; that the defendant knew of the existence of the trust at the time of his marriage with Amber, but that the defendant now refuses to recognize the existence of the trust, but claims the property for himself by right of succession free of any equities owned by the plaintiffs. The defendant demurred to the complaint on the grounds that there were not facts stated sufficient to constitute a cause of action and that the plaintiffs' action was barred by the statute of frauds. The demurrer was overruled. On August 17, 1948, the court made findings of fact and conclusions of

law in favor of the plaintiffs and entered a decree directing the defendant to convey the property to Verba Haws, the wife of Garland Haws, one of the plaintiffs, as successor trustee to hold the property for the use and benefit of the heirs at law of Mrs. Maria A. Haws.

It is first contended by the defendant that the lower court erred in overruling his demurrer because the complaint on its face showed that the plaintiffs were suing upon an oral express trust which is within the statute of frauds. In this state a trust in real property can be created in two ways: (1) by act or operation of law (2) by deed or conveyance in writing. Sec. 33-5-1, Utah Code Annotated, 1943, provides:

"No estate or interest in real property, other than leases for a term not exceeding one year, nor any trust or power over or concerning real property or in any manner relating thereto, shall be created, granted, assigned, surrendered or declared otherwise than by act or operation of law, or by deed or conveyance in writing subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by his lawful agent thereunto authorized by writing."

Admittedly there is no writing evidencing Mrs. Haws' intention that the property conveyed by her be held in trust by Amber. However, under certain circumstances existing at the time a conveyance in trust is made, no writing evidencing an intent to create a trust is required. In those instances, equity will impress a constructive trust upon the property in favor of the person or persons designated by the grantor as the beneficiary or beneficiaries of the oral trust. A constructive trust, being an equitable remedy to prevent unjust enrichment, arises by operation of law and is not within the statute of frauds. Section 45(1)(b), of the Restatement of the Law of Trusts is applicable to the facts of the instant case:

"(1) Where the owner of an interest in land transfers in inter vivos to another in trust for a third person, but no memorandum properly evidencing the intention to create a trust is signed, and the transferee refuses to perform the trust, the transferee holds the interest upon a

constructive trust for the third person, if, but only if, (a) * * * (b) *the transferee at the time of the transfer was in a confidential relation to the transferor,* or (c) * * *" (Italics added.)

The defendant contends that there is no allegation of a confidential relation between Amber and Mrs. Haws. True, it is not specifically alleged that there was a confidential relation. However, in the complaint it is alleged that Mrs. Haws conveyed the property to Amber intending that the latter hold the property in trust for the benefit of the whole family. Implicit in this allegation is that Mrs. Haws reposed confidence in Amber; otherwise, Mrs. Haws would have not made the conveyance. Thus this allegation along with the fact that the grantor and grantee were mother and daughter, which appears on the face of the complaint, is a sufficient allegation of a confidential relation. Scott on Trust, Vol. I, Sec. 44.2, states:

"A constructive trust is imposed even if there is no fiduciary relationship such as that between attorney and client, principal and agent, trustee and beneficiary; it is sufficient that there is a family relationship or other personal relationship of such a character that the transferor is justified in believing that the transferee will act in his interest."

Restatement of the Law of Trust, Sec. 44, comment (c), accord. A constructive trust will be imposed even though at the time of the transfer the transferee intended to perform the agreement, and even though he was not guilty of undue influence in procuring the conveyance. The abuse of the confidential relation consists merely in the failure of the transferee to perform his promise. Scott on Trusts, Vol. I, Sec. 44.2. A court of equity in decreeing a constructive trust, is bound by no unyielding formula, but is free to effect justice according to the equities peculiar to each transaction wherever a failure to perform a duty to convey property would result in unjust enrichment. 3 Bogert on Trusts and Trustees, Part 1, 1946 Ed., § 471.

Nor is it necessary, as argued by the defendant, that the complaint contain an allegation that the grantee made a

promise to the grantor to hold the property in trust as a condition of the conveyance of the property to her. In *Sinclair* v. *Purdy,* 235 N. Y. 245, 139 N. E. 255, 258, the grantor, a court clerk, owned an interest in certain real property. His ownership subjected him to constant importunities to go bail for persons in trouble. In order to escape these importunities, he executed a deed conveying his interest in the property to his sister. After his death litigation arose as to whether the conveyance had been made in trust for him. Said the New York Court of Appeals, speaking through Justice Cardozo,

"Even if we were to accept her [the sister's] statement that there was no distinct promise to hold it for his [the grantor's] benefit, the exaction of such a promise, in view of the relation, might well have seemed to be superfluous. * * * Though a promise in words was lacking, the whole transaction, it might be found, was 'instinct with an obligation' imperfectly expressed. *Wood* v. *Lucy, Lady Duff-Gordon,* 222 N. Y. 88, 91, 118 N. E. 214. It was to be interpreted, not literally or irrespective of its setting, but sensibly and broadly with all human implications."

The defendant's second contention that the lower court erred in admitting parol testimony tending to establish an oral trust must also fail. Restatement of the Law of Trust, Sec. 38 (3) states:

"If the owner of property transfers it inter vivos to another person by a written instrument in which it is not declared that the transferee is to take the property for his own benefit or that he is to hold it in trust, extrinsic evidence may be admitted to show that he was intended to hold the property in trust either for the transferor or for a third party."

We similarly held in *Corey* v. *Roberts,* 82 Utah 445, 25 P. 2d 940; *Peterson* v. *Peterson,* 105 Utah 133, 141 P. 2d 882; and in *Barrett* v. *Vickers,* 100 Utah 534, 116 P. 2d 772, that a deed absolute on its face can be shown to have been intended to be in trust.

The third contention of the defendant is that the plaintiffs failed to prove by clear, unequivocal and conclusive

evidence that Amber took the property subject to the condition that she hold it for the use and benefit of the grantor's heirs. With this contention we cannot agree. The scope of the review of facts in equity cases has long been settled in this jurisdiction. In *Stanley* v. *Stanley*, 97 Utah 520, 94 P. 2d 465, 466, we quoted with approval from *Olivero* v. *Eleganti*, 61 Utah 475, 214 P. 313, 315, where we stated that in equity cases,

"the findings of the trial courts on conflicting evidence will not be set aside unless it manifestly appears that the court has misapplied proven facts or made findings clearly against the weight of the evidence."

The plaintiffs produced ten witnesses who testified as to statements made either by Mrs. Haws or Amber in support of the plaintiffs' contention that the property was conveyed in trust. Only some of that testimony need be here detailed. Anna Gardner, a neighbor of Mrs. Haws who visited with her frequently, testified that "directly after she made her deed," Mrs. Haws told the witness that

"she had made the deed to Amber, her daughter, because she figured Amber would be the most fair. And after her death Amber was going to divide it equally among all of the children."

Again a "couple of months" before Mrs. Haws' death in 1939, Mrs. Gardner testified, Mrs. Haws

"was glad she had her property fixed, because now she knew it would be equally divided after she was gone,"

and that Mrs. Haws

"didn't want to have it probated. She figured there wasn't much and what little there was she wanted it divided the way it should be and Amber would do it."

Christina Jensen, another neighbor of Mrs. Haws, testified that sometime either in 1936 or 1937, she called in at the Haws home to see Mrs. Haws. The witness told Mrs. Haws,

"I had just had a deed made out on my property to my children so that there wouldn't be any trouble if I passed away and she [Mrs. Haws] said, 'Well, that's fine.' And she says 'I hope I got mine fixed all right.' Says, 'I wanted it divided equally between my children', and she said, 'I hope I've got it fixed right.' But she didn't say whether there was a deed or not. Then her daughter, Amber, was there and she went over and said, 'Ma, don't worry about that. It will be taken care of.'"

W. F. Ballam, the husband of Lucinda Haws Ballam, one of the plaintiffs, testified that in the fall of 1928 or 1929, Mrs. Haws told him

"she had the deed fixed on the property * * * and she said she had them fixed in Amber's name because Amber was single. All the rest of them were married. And she felt certain that Amber would keep the property there for a place for any of the children to use if they wanted to come home for any reason. And if it was decided that the property should be disposed of after her death that she knew that Amber would make a fair distribution to all the children."

He testified that in 1934, he and his wife were visiting with Mrs. Haws and Amber in the Haws home. A discussion arose concerning the

"fact that the property had been left—or recorded in Amber's name here, and that Ma (meaning Mrs. Haws) wanted the property to be left there in case any of the children ever would want to come back and use the place for vacation headquarters or have a temporary home,"

and that Amber said,

"Well, that's just the way it's going to be left."

The witness claimed to have heard Amber on numerous occasions affirm that the property was for the benefit of all the family. Mr. Ballam further testified that after Amber's funeral some of the family were discussing what was to be done with the property and who should care for it. Only one of the plaintiff's lived in Utah at that time. The defendant offered to move out of the house because

"he said he knew he had no right to the property; that he knew what Mrs. Haws' wishes were, and he knew Amber's wishes were the same as her mother's."

But, Mr. Ballam testified, the family agreed that the defendant could stay in the house so long as he wanted to, provided he pay the taxes and maintain the property. The witness's testimony as to this agreement of the family to allow the defendant to continue to reside upon the property was corroborated by Lawrence Rose, Hermoine Haws Rose, Garland Haws, and Lucinda Haws Ballam.

Mrs. Ballam testified that in 1927, just before she was married, Mrs. Haws, her mother, told her that

"she had had the place made into Amber's name. But she says, 'I don't want you to feel bad about it, because it's put in her name so that you can all have an equal share.' "

Later in 1933, Mrs. Ballam recorded the deed at the request of her mother, the latter declaring that

"she didn't want us to have our feelings hurt because she wanted to be fair with all of us, and she said the home would always be there for us if any of us wanted to come back; that we were welcome; and that after her death it should be divided equally among all of us and she wasn't leaving it for Amber. It was for all of the family."

Lawrence Rose, husband of Hermoine Haws Rose, one of the plaintiffs testified that Amber and the defendant visited in his home in California in 1939 while they were on their honeymoon, and that Amber at that time mentioned that the family home had been conveyed to her to take care of for the rest of the family, and that she would "see everything was done that was all right with them." Mr. Rose further testified that in 1945 the defendant and Amber were again visitors in his home. Amber was ill and had to return to Salt Lake City for medical treatment. Mrs. Ballam and Mrs. Rose, who were present, asked Amber why she didn't sell the old home in Hyrum and move to California. Amber answered,

" 'no', that she'd never sell the property; that her mother didn't want it that way. And as long as there was any of them living there would always be a home for them. And Mr. Jensen, why he said something, I don't remember what it was, and she told him that it was none of his business what happened to that property; that he'd never get anything out of it."

It would serve no useful purpose to detail the evidence relied upon by the defendant to support his contention that the property was conveyed unconditionally to Amber. There is testimony in the record that Mrs. Haws "had given" or was "going to give" the property to Amber; that Amber and the defendant had made improvements upon the property; and that Amber had told the defendant and others that the property belonged to her. The lower court evidently did not believe this testimony, but believed the plaintiffs who were closer to Mrs. Haws and with the exception of the defendant, closer to Amber than were the defendant's witnesses. It is to be noted that the defendant admitted that the plaintiffs asserted their rights to the property shortly after Amber's funeral.

The defendant points out that there is no evidence that Amber, prior to the delivery of the deed on December 2, 1933, promised to hold the property in trust, but that the earliest occasion appearing in the record upon which Amber expressed even having knowledge of the conveyance was in 1934 when she was visiting with her mother. (See the testimony of W. P. Ballam, supra.) Admittedly, the defendant is correct in his contention that an oral promise to hold real property in trust after the acquisition of title falls before the statute of frauds. However, it can fairly be inferred from all the evidence that Amber, prior to December 2, 1933, knew of her mother's intention to convey to her (Amber) the property in trust. It was testified that Mrs. Haws, in 1927 when she signed the deed and in 1933 when she directed that it be recorded, remarked to her son-in-law and daughter, Mr. and Mrs. Ballam, that the property was for the use and benefit of the whole family. Mrs. Gardner

testified that about in 1927, Mrs. Haws stated that she had conveyed the property in trust to Amber. While Amber may not have known just when her mother would make the conveyance, it can fairly be inferred that when Amber first learned that the conveyance had been made, she knew of the condition attatched to it, and that by her silence she acquiesed in the conveyance with that condition imposed. It is not necessary that it be proved that Amber expressly agreed to hold the property in trust. Here as in *Sinclair* v. *Purdy,* supra, in view of the confidential relation between the grantor and the grantee, the exaction of an express promise would be superfluous. Amber was the oldest in the family and the only one unmarried. It was testified that Mrs. Haws had the utmost confidence that Amber would deal fairly with her brothers and sisters.

The defendant's fourth contention is that the lower court erred in allowing two of the plaintiffs' witnesses to testify as to self-serving declarations made by the grantor after the execution and delivery of the deed, and also in allowing Mrs. Rose and Mrs. Ballam to testify as to conversations had with Amber regarding the property. Assuming that the court did err in not excluding this testimony, there is ample evidence to sustain its findings irrespective of this testimony. None of the evidence which has been detailed in this opinion was objected to on either of the above grounds.

.As his fifth contention, the defendant contends that assuming the existence of a trust, the lower court erred in ordering the defendant to convey all of his right, title, and interest in the property to a trustee named by the court because as an heir of his wife, he is entitled to a one-sixth interest in the property. The plaintiffs admit that the defendant has succeeded to the interest of Amber and that as such he is the holder of an undivided equitable interest in the property. But the plaintiffs urge that since the probate division of the court had decreed legal title to the entire property to be in the defendant, the sub-

sequent decree made by the court below was necessary to nullify the original decree. In order that the defendant's interest in the property be protected, the lower court's decree ordering the defendant to convey the property to Verba Haws who should hold the property as trustee for the use and benefit of the heirs at law of Mrs. Haws is modified to provide that the defendant convey the property to Verba Haws who should hold the property as trustee for the use and benefit of the living heirs of Mrs. Haws and the successors in interest of the deceased heirs of Mrs. Haws.

The defendant's final contention is that plaintiffs' cause of action, if any, is barred by 104-2-24(3), U. C. A. 1943, which provides that an action for relief on the ground of fraud or mistake must be commenced within three years. This contention too must fail. There is no allegation of fraud or mistake in the complaint. The plaintiffs do not rely upon either ground for recovery in this action. It is not contended that Amber fraudulently procured the conveyance of the property to her upon a promise to hold it for the use and benefit of the plaintiffs. Clearly the statute relied upon by the defendant is not here applicable.

The judgment below as modified is affirmed. Costs to the respondents.

PRATT, C. J., and WADE, LATIMER and McDONOUGH, JJ., concur.