HAWKINS v. PERRY, et al.

No. 7786. Decided February 11, 1953. (253 P. 2d 372.)

See 65 C. J., Trusts, sec. 72. Parol agreement to buy land for another as creating constructive trust. 5 Am. Jur., Trusts, sec. 236; 135 A. L. R. 232.

*Earl D. Tanner,* Salt Lake City, for appellant.

*Raymond R. Brady, Lothaire R. Rich* and *Faux, Rich & Kirton,* Salt Lake City, for respondent.

CROCKETT, Justice.

This appeal challenges a decree impressing a trust upon realty in favor of the plaintiff.

In July 1943 LeRoy Hawkins, then a boy of 16, had been working and had saved $300. He was considering buying a car, but talked the matter over with defendant Alfred T. Perry, who was a minister and the plaintiff's uncle. The latter advised him that it would be better to put his money in a certain house he knew was for sale, which could be used as a home and a part of which could be rented. After considering it for several days, the plaintiff told Mr. Perry that he would accept the proposal. Hawkins turned the money over to Perry, the latter promising that the property would be taken in his (Perry's) name and that he would transfer it to Hawkins when he became of age.

Thereafter, July 15, 1943, Perry entered into a contract to purchase the home for $4200; the terms were $300 in cash and $100 per month until a $400 note was paid off, $60 going on the note and $40 on the contract, and thereafter $40 per month until paid in full.

From anything that appears, the project of Perry and Hawkins would have worked out as intended except for the unforeseen and unplanned for intervention of a species of domestic difficulty all too common in our society, a divorce between Mr. and Mrs. Perry, and the further fact that when Perry made the contract, instead of taking the property in his own name as he had agreed, the contract was made out to Perry and his then wife, defendant Lorene Perry, as joint tenant purchasers.

Following the purchase, the Perrys and shortly thereafter the plaintiff and his brother moved into the house. The Perrys stayed there only a few months (until January, 1944) when Mrs. Perry and the children joined Mr. Perry in Oregon where he had preceded them. The plaintiff has continued to live in the house ever since; he has collected

the rents, made the monthly payments on the contract, the utilities and has generally assumed responsibility for the house.

At the time divorce troubles beset the Perrys (1950), Mrs. Perry made a demand on Hawkins concerning ownership of the property. The divorce was granted in March, 1950; the decree awarded Mrs. Perry certain alimony and "all of the right, title and interest" of Perry in the property. As a result of her assertion of claims to the property plaintiff brought this suit. Mrs. A. R. Scriever, assignee of the seller, was later joined as a defendant.

The trial court found that Perry purchased the property as trustee for plaintiff. He did, however, hold that Hawkins should reimburse Mrs. Perry $400 allegedly paid by the Perrys and gave her a lien against Hawkins' interest for that amount. Mrs. Perry, the appellant, assails the finding of the existence of the trust; plaintiff (respondent) cross appeals charging error in the imposition of the $400 lien.

In considering whether there was sufficient basis to impress a trust on the property in favor of the plaintiff, a problem of primary concern is appellant's charge that the trial court erroneously admitted important evidence relating to that issue. Over the objection that their testimony was incompetent and hearsay, witnesses were allowed to testify hat they were present at the time Hawkins turned the down payment money over to Mr. Perry, and that they heard the latter promise that the property would be taken in Perry's name until Hawkins became of age at which time it would be turned over to him. Appellant Lorene Perry argues that because she was not present and in no way participated in this conversation, it is hearsay and incompetent as to her.

If this evidence were eliminated it would indeed leave a hiatus in plaintiff's case which would render the judgment unsupportable.

The rationale of the hearsay rule is given us by
Dean Wigmore: ■

"The Hearsay rule, as accepted in our law, signifies a rule rejecting
assertions, offered testimonially which have not been in some way
subjected to the test of cross-examination. * * *"[1]

But he also notes:

"Where the utterance of specific words is itself a part of the
details of the issue under the substantive law and the pleadings,
their utterance may be proved without violation of the Hearsay rule,
because they are not offered to evidence the truth of the matter that
may be asserted therein."[2]

Any title which Lorene Perry could have acquired in this
property, either by being named as joint tenant purchaser
in the contract or by the divorce decree awarding her
Perry's interest, must be derived through him. Thus
his acts in connection with the acquisition of the ■
property are binding on her; she cannot reap the
benefit of the favorable aspects of his conduct without
being burdened by that which is unfavorable. Perry's state-
ments at the time of the transaction were not declarations
as to some antecedent happening which the percipient wit-
nesses are relating to us second-hand. They are the verbal
acts which go to make up the very transaction which is
under scrutiny to determine its legal effect. The fact that
promises and representations were made is materal to the
issues of this action; they do not evidence "the truth of the
matter * * * asserted therein * * *," at least in
the sense that Wigmore uses that phrase. The witnesses
to the fact that such representations to Hawkins did occur

---

[1] 4 Wigmore on Evidence (1940) Sec. 1362, p. 3.

[2] 6 Wigmore on Evidence (1940) Sec. 1770, p. 185; See *Parry* v.
*Harris*, 93 Utah 317, 72 P. 2d 1044; *State* v. *Corbin*, 117 W. Va. 241,
186 S. E. 179; see *Golden* v. *American Keene Cement & Plaster Co.*,
98 Utah 23, 95 P. 2d 755.

were subject to cross examination. The trial court correctly admitted their testimony in evidence.[3]

But defendant further avers that even if the evidence be competent, yet there cannot be made out a trust in favor of the plaintiff because, there being admittedly no formal express trust, the facts fit neither a resulting nor a constructive trust. A view of the distinction between the latter two is helpful. Scott on Trusts says:[4]

"The constructive trust * * * is to be distinguished from a resulting trust. Where A's money is used by B with A's consent in purchasing property in the name of B, a resulting trust arises in favor of A. Where A's money is used by B without A's consent in purchasing property in B's name, B holds the property upon a constructive trust for A. In the former case, the resulting trust arises because of the presumed intention of the parties. In the latter case, the constructive trust is imposed upon B to prevent his unjust enrichment."

Concerning a resulting trust this court has quoted as the rule the following words from the Nebraska case of *Bailey* v. *Dobbins*:[5] ■

" 'Generally speaking, where the purchase money of land is paid by one person, and the title is taken in the name of another, the party taking the title is presumed to hold it in trust for him who pays the purchase price The reason given for this rule is that the party who pays the money is presumed to intend to become the owner of the property, and the beneficial title follows such intention.' "

Under the arrangement as hereinabove outlined, Hawkins having consented that Perry use Hawkins' money to purchase the property in Perry's name, the pattern necessary to constitute a resulting trust is made out and so far as Perry himself is concerned, the matter could be simply disposed of.

---

[3]See 2 Bogert on Trusts (1935) Sec. 454, p. 1362.

[4]3 Scott on Trusts (1939) Sec. 508.1, p. 2437, see Secs. 440.1 & 462.1. See Restatement of Restitution (1937) Sec. 160(b).

[5]67 Neb. 548, 550, 93 N. W. 687; quoted in *Wheelwright* v. *Roman*, 50 Utah 10, 19, 165 P 513, 516.

But the fact that Mrs. Perry's name was added as a co-purchaser, although Hawkins consented only that the property be put in Perry's name, and her acquisition through the divorce decree of any interest Perry had in it, coupled with her assertion of ownership against the plaintiff, create a situation the overall effect of which is to constitute a breach of Perry's duty to convey the realty to Hawkins. It is therefore proper to consider the case under a constructive trust theory.

Equity imposes a constructive trust to prevent one from unjustly profiting through fraud or the violation of a duty imposed under a fiduciary or confidential relationship. The Utah decision of *Chadwick* v. *Arnold*[6] declares

"\* \* \* that a trust ex maleficio [constructive trust] arises whenever a person acquires the legal title to property of another by means of an intentional false or fraudulent verbal promise to hold the same for a certain purpose, and, having thus obtained the title, retains and claims the property as his own"

It is now well recognized that actual fraud is not necessary, but may be presumed where there is a relationship of confidence between the parties to a transaction and there are

"other circumstances tending to show that some advantage had been taken by the dominant party with a consequent abuse of confidence."[7]

In *Haws* v. *Jensen*, we wrote:[8]

"A constructive trust will be imposed even though at the time of the transfer the transferee intended to perform the agreement and even though he was not guilty of undue influence in procuring

---

[6]34 Utah 48, 56, 95 P. 527, 530.

[7]*Renshaw* v. *Tracy Loan & Trust Co.*, 87 Utah 364, 367, 49 P. 2d 403, 404, 100 A. L. R. 872.

[8]116 Utah 212, 209 P. 2d 229, 232. See *Lawley* v. *Hickenlooper*, 61 Utah 298, 306, 212 P. 526; Restatement of Restitution (1937) Sec. 182; 3 Bogert on Trusts (1946) Sec. 496.

the conveyance. The abuse of the confidential relation consists merely in the failure of the transferee to perform his promise."

To this may be added, the confidential relation can also be abused by the promisor's allowing himself to get into a position where he cannot perform his promise.

Appellant particularly imputes error in the trial court's determination that there was a trust, asserting the evidence does not establish a fiduciary or confidential relationship between Perry and Hawkins. Such relationship need not necessarily be of a formal nature. Whether the status fulfils the pattern of some such label as "fiduciary" or "confidential" is not important; the superiority of one party and the dependence of the other and his trust and reliance in the former are the important factors.[9] Bogert states this concept well:[10]

"If by reason of kinship, business association, disparity in age, or physical or mental condition or other reason, * * * [one party] is in an especially intimate position with regard to the [other], and the latter reposes a high degree of trust and confidence in the former, the court may find that the relationship is technically 'confidential.' "

At the time Hawkins gave Perry the money the former was a boy of 16; he was acting under the advice of Mr. Perry, who was an older man, his relative, and a minister of the gospel. These circumstances satisfy the requirement that a confidential relationship exist as a foundation for the imposition of a constructive trust as decreed by the trial court.

We are next confronted with the contention that even if Perry's interest is burdened with the trust, Mrs. Perry, as co-purchaser, acquired in her own right an interest in

[9]See *Renshaw* v. *Tracy Loan & Trust Co.*, 87 Utah 364, 49 P. 2d 403, 100 A. L. R. 872; *Newell* v. *Halloran*, 68 Utah 407, 250 P. 986; *Renegar* v. *Bruning*, 190 Okl. 340, 123 P. 2d 686; 2 Pomeroy, Equity Jurisprudence (1918) Sec. 956, p. 2040.

[10]3 Bogert on Trusts (1946), Sec. 496, p. 205; also see Sec. 482.

the property and that it is not subject to the trust since she was unaware of the promise to Hawkins. Perry may have purchased the realty for Hawkins' benefit and in making the contract have followed common practice by adding his wife's name as joint tenant co-purchaser, without intending that she have any actual interest in it, and fully expecting that at the proper time it would be conveyed to Hawkins; or Perry may have intended to make her a gift of some interest in the property. In either event, she could acquire no interest which would be independent of the trust in favor of plaintiff, that is, unless she could show that she was a bona fide purchaser. The court found that she was not.

The trial court expressly found:

"that defendant Lorene Perry was placed upon the contract as the wife of Alfred T. Perry, but that she has not paid any consideration for the privilege of being placed on said contract and that she is not a bona fide purchaser in due course and is subject to all of the rights of the plaintiff as the beneficiary of the trust. And, that neither Lorene Perry nor Alfred T. Perry have any equity in said real property."

The lower court could justly and legally regard Lorene Perry's own evidence as not inconsistent with the foregoing finding. Perry himself negotiated the purchase of the house and the execution of the contract. Her contention that she was actually a co-purchaser rests upon the fact that her husband asked her to sign the agreement, which she did, and her claim that money which helped make some of the initial payments on the property in controversy came from a loan he secured from his employer by pledging "the deeds" to some property then owned by her. Assuming this loan was made, she admits that it was repaid from her husband's wages; his wages also paid any other payments made by the Perrys. According to *Anderson* v. *Cercone*:[11]

---

[11] 54 Utah 345, 348, 180 P. 586, 587.

"Property purchased from the   *  *  *   [earnings of the husband where the wife's contribution was the labor expended in performing her wifely duties] belongs to the husband, subject only to such interest as the law gives her in the property of her husband. In other words, her rights in such property are neither more nor less than they would be if the husband had bought the property with proceeds derived from his separate estate."

Under the facts disclosed by the evidence and as hereinabove discussed, we cannot say that the trial court erred in concluding that Mrs. Perry had no beneficial interest in the property or that whatever nominal interest she may have acquired from the appearance of her name on the contract was subject to the trust in favor of the plaintiff.[12]

As the first point of his cross-appeal the plaintiff denounces as error the court's allowance of an equitable lien of $400 in favor of defendant Lorene Perry upon Hawkins' interest. Although it is difficult to verify this exact figure from the record, there is sufficient basis in the evidence to support the trial court's finding that this amount was paid by the Perry's. With respect to this aspect of the case he apparently gave credence to the testimony of Mrs. Perry, who is entitled to all the rights of her husband in the property. She stated that they (the Perrys) paid the first "five or six payments." The rental income was sufficient to take care of the $40 per month, leaving $60 for them to contribute. Six (months) times $60 equals $360. Adding to this sum $50 she claims was advanced out of her own funds, we arrive at a figure within a few dollars of that fixed by the trial court. Plaintiff, himself, although claiming to have paid all the $40 payments did not do so as to all of the $60 ones on the note. Consequently the finding should not be disturbed.

[12]See *Haws* v. *Jensen*, 116 Utah 212, 209 P. 2d 229; *Corey* v. *Roberts*, 82 Utah 445, 25 P. 2d 940; *Lawley* v. *Hickenlooper*, 61 Utah 298, 212 P. 526; *Oliver* v. *Piatt*, 3 How. 333, 44 U. S. 333, 11 L. Ed. 622.

The second point on plaintiff's cross-appeal attacks the portion of the judgment awarding $50 attorney's fee to defendant Mrs. Scriever, assignee of the seller. The contract provides:

"The Buyer and Seller each agree that should they default in any of the covenants and agreements contained herein, to pay all costs and expenses that may arise from enforcing this agreement, either by suit or otherwise, including a reasonable attorney's fee."

There was no default of the buyer on the contract; nor did any aspect of this action require Mrs. Scriever to enforce her rights under the agreement. The controversy was between plaintiff and defendant and she was made a party merely because she is the seller's assignee. In the absence of statute, or agreement between the parties, a litigant cannot be awarded attorney's fees.[13] The award to her was improper and should be vacated. Except for this minor item, the judgment is

Affirmed. Costs to respondent Hawkins.

WOLFE, C. J., and McDONOUGH, HENRIOD and WADE, JJ., concur.

[13]*St. Joseph Stock Yards Co.* v. *Love*, 57 Utah 450, 195 P. 305, 25 A. L. R. 569; 14 Am. Jur., Costs Sec. 63.