395 P.2d 52

**METROPOLITAN WATER DISTRICT OF PROVO CITY, a public corporation, Plaintiff and Respondent,**

**v.**

**PROVO RIVER WATER USERS ASSOCIATION, a corporation, Defendant and Appellant.**

**No. 10000.**

Supreme Court of Utah.

Sept. 3, 1964.

Joseph Novak, Salt Lake City, for appellant.

Aldrich, Bullock & Nelson, Provo, for respondent.

CALLISTER, Justice:

Suit to determine the entitlement, as between plaintiff and defendant, to the income and interest derived from the investment of $6,000 which plaintiff had given defendant under agreement. Defendant appeals from an adverse decision.

Defendant, Provo River Water Users Association, was created primarily for the purpose of contracting with the Bureau of Reclamation (U. S. Department of the Interior) for the repayment of the cost of constructing the Deer Creek Division of the Provo River Project and the cost of operating and maintaining the same. It initially entered into a contract with the Bureau on June 27, 1936 (as amended on July 3, 1937). This original contract provided for the expenditure by the Bureau, and the repayment thereof (without interest) by the defendant of up to the sum of $7,600,000. The repayment was to be made in 40 annual installments to commence upon completion of the Deer Creek Division.

Plaintiff, Metropolitan Water District of Provo City, entered into a stock subscription contract with defendant on September 18, 1937, wherein it agreed to purchase 8,000 shares of defendant's stock at a price determined by its proportion (8%) of the total sums required to pay the Bureau by defendant—plaintiff's total payment not to exceed $608,000 (8% of $7,600,000). Payments for the stock were to be made when assessed by defendant as the latter was called upon to make its contractual payments to the Bureau.

As happens frequently, the cost estimate of the project proved to be rather low. Therefore, in 1946, the defendant entered into a supplemental contract with the Bureau wherein the latter agreed to expend a total of $11,400,000, and the former agreed to repay that sum under the same terms contained in their original contract. In order to meet this additional obligation, plaintiff and other stock subscribers agreed to increase their obligations to defendant. However, the plaintiff's proportionate share of the increase exceeded by $6,000 its then statutory debt limitation.[1] It therefore, on December 2, 1946, two days prior to the submission of the amended subscription contract to the voters in the district, delivered to defendant a check for $6,000. The amended contract, as approved by the voters, provided that plaintiff's liability to defendant "shall not exceed the sum of $912,000, less $6,000 previously paid by the District to the Association on the purchase price of said stock * * *."

Contrary to expectations, it was necessary for the Bureau to expend a sum consider-

---

1. 100–10–18(g) U.C.A.1943.

ably in excess of $11,400,000 to complete the project. The defendant agreed to use the project facilities and to pay annual rates as fixed by the Bureau. The latter agreed to suspend the 40 equal annual installments provided for in the supplemental contract until the excess amount had been thus repaid by defendant. None of these installments has become due and will not for several years to come.

Two days after the execution of the amended subscription contract, the defendant's stockholders (including plaintiff) unanimously adopted a resolution providing that the $6,000 payment be credited to the account of plaintiff on its contractual obligation for the purchase of its subscribed stock, and that the $6,000 be deducted from the first contract assessments. Approximately six weeks later, the defendant's board of directors adopted a resolution providing that the $6,000 was not to be mingled with its funds, but was for investment in a separate account at the highest rate of interest consistent with safety, and that all interest accrue to the credit of plaintiff. This latter resolution was, according to plaintiff, in conformity with an oral agreement previously entered into by the officers of the two associations.

From the time of its receipt and for some 14 years thereafter, defendant carried the $6,000 and the interest derived from its investment on its books as a credit to plaintiff's account. This accounting practice was not changed until 1961, when the $6,000, together with interest accruals, was credited to the general stockholders equity account. The following year, the directors of defendant adopted a resolution declaring the interest accruals to be its property.

The lower court found, in substance, that the delivery of the $6,000 was made upon a mutual understanding, that it and the interest thereon would be applied to the plaintiff's account until such time as payments to the Bureau would be required. It entered a judgment accordingly and ordered defendant to (a) keep the $6,000 invested, (b) pay said principal sum to the Bureau when the first payment shall become due under the supplemental contract, (c) give plaintiff credit for all interest derived from the investment thereof on its indebtedness, and (d) give plaintiff credit for all interest and income derived on any payment, whether classed as installments, assessments or otherwise, which might hereafter become due.

Defendant's main contention on appeal is that the delivery of the $6,000 constituted an unconditional payment upon plaintiff's indebtedness, and that the lower court erred in permitting parol evidence to be introduced to change the terms of the amended subscription contract. We cannot agree with this contention. First of all, it should be noted that the $6,000 check was delivered prior to the time the amended contract was executed. It was not delivered in com-

pliance with the contract. It was delivered, according to the findings of the trial court, prior to the execution of the amended contract upon the mutual understanding that the interest proceeds from the sum would be applied towards the plaintiff's obligations when, and if, they became due.

Under the circumstances of this case, it was proper for the lower court to admit the parol evidence for it established the existence of an oral trust. Parol evidence is admissible for such a purpose, particularly where there has been part performance.[2] In Haws v. Jensen,[3] this court upheld the admission of parol evidence to establish an oral trust and cited with approval the Restatement of Trusts, Section 38(3) which reads as follows:

"If the owner of property transfers it inter vivos to another person by a written instrument in which it is not declared that the transferee is to take the property for his benefit or that he is to hold it in trust, extrinsic evidence may be admitted to show that he was intended to hold the property in trust for the transferor or for a third party."[4]

Even assuming the existence of an oral agreement, defendant urges that it is void because it would be a device to evade the statutory debt limitation. Section 100–10–18(g), U.C.A.1943 grants a District the power:

"To borrow money and incur indebtedness and to issue bonds or either (other) evidence of such indebtedness; provided, however, that no district * * * shall incur indebtedness which, in the aggregate, shall exceed 10 per cent of the assessed valuation * * *."

The foregoing statute confines the term "indebtedness" to obligations in the form of bonds or other written evidence of indebtedness. The $6,000 is in no way a part of plaintiff's indebtedness. It was evidently obtained from funds already in existence and was not, therefore, within the operation of the limitation of indebtedness.[5] Since the $6,000, by the terms of the oral trust, is permanently committed to extinguish the liability of plaintiff when payments become due, there is no basis in fact to assert that the statutory limit of indebtedness has been exceeded.

Other points made on appeal by defendant have been considered and are without merit.

Affirmed. Costs to plaintiff.

HENRIOD, C. J., and McDONOUGH, CROCKETT and WADE, JJ., concur.

---

2. 89 C.J.S. Trusts § 70, p. 853.
3. 116 Utah 212. 209 P.2d 229 (1949).
4. See also: Carillo v. Taylor, 81 Ariz. 14, 299 P.2d 188 (1956).
5. 134 A.L.R., Debt Limit, p. 1400.