Woodruff ASHTON, Plaintiff and Respondent,

v.

Wilford ASHTON and Virginia Ashton, Defendants and Appellants.

No. 19129.

Supreme Court of Utah.

Feb. 4, 1987.

Alan D. Boyack, St. George, for defendants and appellants.

Phillip L. Foremaster, St. George, for plaintiff and respondent.

HALL, Chief Justice:

Plaintiff brought this quiet title action to settle a dispute over real property located in Hurricane, Utah.

I

A trial was had in this case on February 1, 2, and 3, 1983, before an advisory jury. The case was submitted on special interrogatories which the jury returned in favor of plaintiff. The trial court entered findings of fact and conclusions of law which generally conformed to the pleadings and incorporated the substance of the jury's answers to the special interrogatories. Those findings provided, in pertinent part:

1. That the Plaintiff Woodruff Ashton and the Defendant Wilford Ashton are brothers, and the Defendant Virginia M. Ashton is the wife of the Defendant Wilford Ashton....

2. That the Plaintiff and the Defendant Wilford Ashton had a brother known under the name and style of Frank Ashton, which brother is now deceased, having passed away some fourteen years prior hereto.

3. That prior to the death of said Frank Ashton he was the owner of the

following described real property and water rights located in and or about Hurricane, Washington County, State of Utah, to-wit:

[Description of property and two water shares stated.]

4. That prior to the death of said Frank Ashton, said Frank Ashton did approach his brother Wilford Ashton, ... and did advise said Wilford Ashton, that it was his desire to convey the above described property to Woodruff Ashton as to the East one-half, and to Wilford Ashton as to the West one-half, but that he was reluctant to make said conveyance to said Woodruff Ashton, ... as at the time said Woodruff Ashton was having marital difficulties with his then spouse Edith Ashton.

5. That because of the same, said Frank Ashton did advise ... Wilford Ashton that he would convey all of said property and water rights to ... Wilford Ashton provided, however, that as soon as the said marital problems of ... Woodruff Ashton were solved, that said Wilford Ashton and his wife Virginia M. Ashton would convey the East one-half of said property together with one share of said water right to ... Woodruff Ashton....

6. That said Wilford Ashton agreed to said arrangement, and in pursuance to said agreement, the said Frank Ashton did convey title to the above said real property and water rights to ... Wilford Ashton and to his wife Virginia M. Ashton as husband and wife and as joint tenants with full right of survivorship and not as tenants in common.

....

9. That because of the same, a confidential relationship and trust existed between Frank Ashton and Wilford Ashton and Virginia M. Ashton....

10. That subsequent thereto, ... Woodruff Ashton and ... Wilford Ashton did go upon said property, and did agree upon a division of the same, ... the intent of said brothers to split said property equally, one-half each.

10 [sic]. That subsequently and over the years, subsequent to the conveyance of said property, the said Plaintiff did make demand upon said Defendants for a conveyance to him of said real property, but defendants did refuse to make said conveyance, the said refusal being conditioned upon the failure of the said Plaintiff to solve his marital problems with said Edith Ashton....

11. That in October of 1980 the said Woodruff Ashton did complete divorce action from said Edith Ashton ..., thereupon solving his marital problems with said Edith Ashton....

12. That subsequent to said divorce, the said Woodruff Ashton did again make demand upon said Defendants that they convey to him the said property above described, and said Defendants did fail and refuse to do the same. ˉ

13. That because of said refusal to convey as aforesaid, said Defendants Wilford Ashton and Virginia M. Ashton, his wife did breach said confidential relationship existing between themselves and said Frank Ashton, and the Plaintiff Woodruff Ashton, and said Wilford Ashton and Virginia M. Ashton, his wife thereupon became unjustly enriched.

In accordance with these findings, the trial court entered judgment ordering defendants to convey the east one-half of the property, together with one water share, to plaintiff. When defendants failed to deed the property as ordered, the judgment was amended to reflect that plaintiff owned the east one-half of the property and one share of water.

## II

In their first point on appeal, defendants challenge the weight and sufficiency of the evidence to support the trial court's imposition of a constructive trust. Such claims require a two-step examination, first of the findings of fact and second of the conclusions of law.

Review of findings of fact is controlled by Utah Rule of Civil Procedure 52(a), which now provides, in pertinent part:

In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon.... *Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.*[1]

Defendants' attack on the evidence essentially consists of two claims: First, defendants contend that no promise to reconvey the property was ever made. In support of this contention, defendants rely on their own trial testimony wherein they denied ever having promised to convey any of the subject property to plaintiff or ever having made any statements to this effect. In this regard, defendants also rely on the fact that plaintiff's attorney, the scrivener of the deed, had no independent recollection of the conveyance by Frank to defendants.[2] Second, defendants simply contend that there is no evidence that Frank required or solicited a promise from Wilford or detrimentally relied thereon as a condition of conveying the property.

■ The Court begins its analysis with the trial court's findings of fact, not with an appellant's view of the way he or she believes the facts should have been found.[3] Defendants have not even begun to seriously discuss the trial court's findings that dispute their version of the facts. In *Scharf v. BMG Corp.,*[4] we explained the duty incumbent upon an appellant to mount a successful challenge to a trial court's findings of fact. An appellant must marshal all of the evidence in support of the trial court's findings. Only then can we consider whether those findings are "clearly erroneous." Because defendants have failed to make such a showing, the trial court's findings will not be disturbed.

We next turn to the lower court's conclusions of law. Conclusions of law are accorded no particular deference, but instead are reviewed simply for correctness.[5] The conclusions of law provided, in pertinent part:

1. That the Plaintiff Woodruff Ashton is entitled to an Order of this Court ordering and requiring the Defendants Wilford Ashton and Virginia M. Ashton, his wife[,] to convey the above described parcel of real property, together with said water right[,] to said Plaintiff free and clear of all liens and encumbrances placed thereon by Defendants above named.

As previously noted, the trial judge subsequently modified this ruling when defendants refused to convey the property. Since we have not disturbed the trial court's findings of fact, our duty is merely to determine whether those findings justify the trial court's conclusion of law.

■ A constructive trust is an equitable remedy which arises by operation of law to prevent unjust enrichment.[6] Ac-

---

1. The emphasized portion of the rule was added by order of this Court on October 30, 1986, and became effective January 1, 1987. *Cf.* Utah R.Civ.P. 1(b) (Repl. Vol. 9B, 1977 ed.) (rules govern pending actions upon date they become effective). The change in the rule is in part attributable to the 1984 repeal and reenactment of article VIII of the Utah Constitution. Since July 1, 1985, article VIII has not made a distinction between equity cases and cases at law. *See* Utah Const. art. VIII, § 9 (1895, repealed 1985) ("The appeal shall be upon the record made in the court below and under such regulations as may be provided by law. In equity cases the appeal may be on questions of both law and fact; in cases at law the appeal shall be on questions of law alone.").

2. Defendants argue that plaintiff's attorney would not have drafted and witnessed a deed that was subject to an underlying promise to reconvey the subject property.

3. *Scharf v. BMG Corp.,* 700 P.2d 1068, 1070 (Utah 1985).

4. 700 P.2d 1068.

5. *Id.* at 1070.

6. *See, e.g., In re Estate of Hock,* 655 P.2d 1111, 1114 (Utah 1982); *Carnesecca v. Carnesecca,* 572 P.2d 708, 710, (Utah 1977); *Hawkins v. Perry,* 123 Utah 16, 23, 253 P.2d 372, 375 (1953); *Haws v. Jensen,* 116 Utah 212, 216, 209 P.2d 229, 231 (1949).

cordingly, parol evidence may be introduced to establish a constructive trust.[7] If the evidence is of a clear and convincing nature such that the remedy should be granted, the trial court may alter a deed which is regular in form and presumed to convey clear title.[8]

Restatement (Second) of Trusts § 45 (1957) provides, in pertinent part:

Effect of Failure of Oral Trust for a Third Person

(1) Where the owner of an interest in land transfers it inter vivos to another in trust for a third person, but no memorandum properly evidencing the intention to create a trust is signed, as required by the Statute of Frauds, and the transferee refuses to perform the trust, the transferee holds the interest upon a constructive trust for the third person, if, but only if,

. . . .

(b) The transferee at the time of the transfer was in a confidential relation to the transferor.

In *Parks v. Zions First National Bank,*[9] the Court construed section 44, Restatement (Second) of Trusts, as being applicable only to those cases arising out of express trusts or attempts to create express trusts.[10] The reasoning stated therein is without doubt applicable to section 45, and dictum in that opinion so states.[11]

In *Parks,* we described an express trust as a fiduciary relationship with respect to property, arising as a result of a manifestation of intent to create it and subjecting the person in whom title is vested to equitable duties to deal with it for the benefit of others.[12] After reviewing the findings of

fact, we do not hesitate to hold that an oral express trust existed in this case and that section 45 of the Restatement (Second) of Trusts is therefore controlling.

In *Haws v. Jensen,*[13] this Court applied section 45(1)(b) of the Restatement of Trusts to a fact situation analogous to the one before us.[14] In *Haws,* a mother deeded a home to her daughter. The deed was recorded, and the mother and daughter subsequently died. Thereafter, the property was distributed from the daughter's estate to the defendant, her husband, in fee simple. The plaintiffs initiated an action, claiming that the property had been distributed by the mother to the daughter in trust for the benefit of the plaintiffs. The defendant's demurrer to the complaint was overruled, and he was directed to convey the property to a newly appointed trustee.[15] This Court affirmed the decree based upon section 45(1)(b) of the Restatement of Trusts.[16] We now turn to the facts of this case.

Finding No. 3 shows that Frank owned a tract of land and associated water shares, portions of which are the subject of this case. Findings No. 4, No. 5, and No. 6 clearly indicate that Wilford agreed to accept the water and tract of land and reconvey one-half thereof to plaintiff when plaintiff's marital problems were solved. Finding No. 9 indicates that a confidential relationship existed between Frank and Wilford. Findings No. 12 and No. 13 state that when plaintiff's marital problems were resolved, defendants refused to convey the east one-half of the property and a water share as was promised Frank, thereby breaching the confidential relationship be-

---

7. *In re Estate of Hock,* 655 P.2d at 1114; *Carnesecca,* 572 P.2d at 710; *Haws,* 116 Utah at 218, 209 P.2d at 232–33.

8. *See In re Estate of Hock,* 655 P.2d at 1114.

9. 673 P.2d 590 (Utah 1983).

10. *Id.* at 597 (quoting the Restatement of Restitution § 160 comment a (1937)).

11. *Id.* at 597–98.

12. *Id.* at 598. *Accord* Restatement (Second) of Trusts § 2 (1957).

13. 116 Utah 212, 209 P.2d 229.

14. 116 Utah 2d at 216–17, 209 P.2d at 231–32. Section 45(1)(b) in the first Restatement of Trusts is identical to that section in the Restatement (Second) of Trusts.

15. 116 Utah at 214–16, 209 P.2d at 231.

16. *Id.* at 216–17, 209 P.2d at 231–32.

tween Frank and defendants. Additionally, the record fails to disclose any evidence of a memorandum sufficient to satisfy the statute of frauds. Accordingly, under section 45 of the Restatement (Second) of Trusts, it was proper to impose a constructive trust. Therefore, we uphold the trial court's conclusion of law to this effect.

## III

Defendants' second point is that the trial court erred by imposing a constructive trust upon Virginia Ashton's undivided one-half interest in the tract of land. The contention is that Virginia did nothing to justify the imposition of a constructive trust since she made no promise to Frank to reconvey the property. She claims, therefore, that the conveyance by Frank to defendants as joint tenants must be construed as a gift of one-half of the property by Frank to her.

In *Hawkins v. Perry,* [17] the Court was presented with this same argument. In that case, Hawkins, a sixteen-year-old boy, gave his uncle, Mr. Perry, money to purchase a home in Perry's name with the understanding that when Hawkins reached the age of majority, Mr. Perry would reconvey the home to Hawkins. The title to the home was taken in the names of Mr. and Mrs. Perry. Thereafter, Mr. and Mrs. Perry were divorced, and Mrs. Perry was awarded the subject home.[18] Hawkins then sued Mrs. Perry and asked that a constructive trust be imposed on the home for his benefit.[19] Mrs. Perry defended on the ground that she was not a party to her husband's agreement and was therefore not bound by it. In upholding the constructive trust imposed by the court on the home as against Mrs. Perry, Justice Crockett, writing for the Court, stated:

> We are next confronted with the contention that even if Perry's interest is burdened with the trust, Mrs. Perry, as

co-purchaser, acquired in her own right an interest in the property and that it is not subject to the trust since she was unaware of the promise to Hawkins. Perry may have purchased the realty for Hawkins' benefit and in making the contract have followed common practice by adding his wife's name as joint tenant co-purchaser, without intending that she have any actual interest in it, and fully expecting that at the proper time it would be conveyed to Hawkins; or Perry may have intended to make her a gift of some interest in the property. In either event, she could acquire no interest which would be independent of the trust in favor of plaintiff, that is, unless she could show that she was a bona fide purchaser.[20]

In *Hawkins,* the trial court expressly found that Mrs. Perry was not a bona fide purchaser.[21] Although no such finding exists in this case, the record is devoid of any evidence suggesting that Virginia paid any consideration for the subject property. Nor is there any evidence that Frank intended Virginia's interest to be any different in character from Wilford's interest. In any event, Virginia's interest could not have been obtained but for Wilford's actions. "Thus his acts in connection with the acquisition of the property are binding on her...."[22] We hold that defendants' contention is therefore without merit.

## IV

Defendants' next point is that the trial court erred by not allowing their expert witness to testify at trial. Because trial in this case was held in February 1983, Rule 5 of the Utah Rules of Evidence (Repl. Vol. 9B, 1977 ed.) (superseded September 1, 1983) controlled this case. That rule provided in part: "A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed ...

17. 123 Utah 16, 253 P.2d 372.

18. *Id.* at 19–20, 253 P.2d at 373–74.

19. *Id.* at 20, 253 P.2d at 374.

20. *Id.* at 24–25, 253 P.2d at 376.

21. *Id.*

22. *Id.* at 21, 253 P.2d at 374.

unless (a) it appears of record that the proponent of the evidence ... made known the substance of the evidence."[23]

At trial, defendants called Mr. Lowry Snow as a witness. Although plaintiff stipulated that the witness was a qualified and competent attorney and abstractor, the court sua sponte disallowed the witness's testimony. The proffer for the record was as follows:

> Mr. Snow would testify to the effect that a joint tenant who gives away, conveys, hypothecates, encumbers a piece of property then converts that joint tenancy into tenancy in common, and as such is severable one joint tenant from the other, and that is the legal effect granted, and it's also an ability by the jury to obtain that amount of knowledge which they need over a technical subject that this expert witness could provide to the court....

Since a proffer was made, we reach the merits of defendants' claim.

First, it is a basic maxim of law that testimonial opinion on the state of the law is to be excluded.[24] The function of an expert is to relate an opinion of fact to the jury.[25] The opinion is either material in terms of the applicable law or it is not. The jurors must apply the opinion (if they give it credit) in terms of the court's instructions concerning the applicable law.[26] An attorney's opinion on the applicable law does not aid the jury, which is duty-bound to apply the law as stated by the court.[27]

Second, Rule 1(2) of the Utah Rules of Evidence (Repl. Vol. 9B, 1977 ed.) (superseded September 1, 1983) defines "relevant evidence" as that which tends to prove or disprove the existence of a material fact.[28] Here there is absolutely no evidence that a conveyance was made by defendants after the property was deeded to them by Frank. Thus it would appear that the opinion had no relevance to this case.

Finally, defendants' attorney stated that he was going to ask the witness "some hypothetical situations." Hypothetical questions must be based upon facts in evidence.[29] As stated, there were no facts in this case that a conveyance was made by defendants after they received the deed from Frank. The contention is therefore without merit.

## V

Defendants' final point is that the trial court abused its discretion by failing to explain to the jury defendants' absence on the final day of trial. The court told the jury: "I have been advised that Mr. Wilford Ashton is indisposed today. He and his wife will not be present, and I therefore excuse their presence."[30] The record reflects an objection and a motion for a mistrial, but nowhere sets forth the basis therefor. However, plaintiff's brief concedes that the motion was grounded on defendants' request that the court explain to the jury that Wilford had to be hospitalized for health reasons.

Utah Rule of Civil Procedure 61 (Repl. Vol. 9B, 1977 ed.) provides:

---

23. The substance of this provision is presently located in Rule 103 of the Utah Rules of Evidence (Repl. Vol. 9B, 1977 ed., Supp. 1986).

24. 7 J. Wigmore, *Evidence in Trials at Common Law* § 1952, at 103 (J. Chadbourn ed. 1978).

25. *State v. Kelly,* 118 N.J.Super. 38, 54, 285 A.2d 571, 580 (N.J.Super.Ct.App.Div.), *certification denied,* 60 N.J. 350, 289 A.2d 795 (1972).

26. *Id.*

27. *See id.*

28. The substance of this provision is now found at Utah R.Evid. 401 (Repl.Vol. 9B, 1977 ed., Supp. 1986).

29. *See Wagner v. Olsen,* 25 Utah 2d 366, 371, 482 P.2d 702, 705–06 (1971).

30. The jury was well aware that defendant Wilford Ashton was not a well man. When first called as a witness on behalf of defendants, defendants' attorney explained that defendant Wilford Ashton had undergone an operation on his throat for cancer and that therefore he had a difficult time in speaking.

No error in either the admission or the exclusion of evidence, and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties, is ground for granting a new trial or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

We have construed this provision as placing upon an appellant the burden of showing not only that an error occurred, but that it was substantial and prejudicial in that the appellant was deprived in some manner of a full and fair consideration of the disputed issues by the jury.[31] Defendants in this case have failed to provide this Court with any basis for declaring that the trial court's instruction was an abuse of discretion or that they were denied a fair trial. Because defendants failed to meet their burden under Rule 61, their contention is without merit.

The judgment of the trial court is affirmed. Costs to plaintiff.

STEWART, HOWE, DURHAM and ZIMMERMAN, JJ., concur.

**31.** *Redevelopment Agency v. Mitsui Inv. Inc.,* 522 P.2d 1370, 1374 & n. 12 (Utah 1974).