# GOLDEN v. AMERICAN KEENE CEMENT & PLASTER CO.

No. 5945.  Decided November 15, 1939.  (95 P. 2d 755.)

*W. W. Ritter,* of Salt Lake City, for appellant.

*Henry D. Moyle,* of Salt Lake City, for respondent.

PRATT, Justice.

Thomas W. Golden sued American Keene Cement & Plaster Company in foreclosure. Golden recovered a judgment and decree of foreclosure. The American Keene Cement & Plaster Company has taken this appeal.

Hereafter we shall refer to the defendant and appellant, American Keene Cement & Plaster Company, as the Plaster Company. We shall do this for the reason that there is involved in the case, another company of a very similar name —the National Keene Cement Company. To this company we shall hereafter apply the name of Cement Company. There is also involved in the case a corporation foreign to this state called the California Stucco Products Corporation. For the sake of brevity we shall call this concern the California Corporation. The remaining parties are easily identified by their names.

The Plaster Company in its defense to the suit of Golden, contends that he, Golden, was merely a figurehead for the California Corporation, and that that corporation was, at the time of the making and execution of the note and mortgage sued upon, engaged in business in this state in the guise of the Cement Company, another alter ego, without having complied with the laws of this state; the result being that the note and mortgage are invalid under and pursuant to Section 18-8-5, R. S. Utah 1933, which reads as follows:

"Any foreign corporation doing business within this state and failing to comply with the provisions of sections 18-8-1 to 18-8-3, inclusive, shall not be entitled to the benefit of the laws of this state relating to

corporations * * * and every contract, agreement and transaction whatsoever made or entered into by or on behalf of any such corporation within this state or to be executed or performed within this state shall be wholly void on behalf of such corporation and its assignees and every person deriving any interest or title therefrom, but shall be valid and enforceable against such corporation, assignee and person * * * provided, that this section shall not be held to apply to persons acting as agents for foreign corporations for a special or temporary purpose or for a purpose not within the ordinary business of such corporation, nor shall it apply to attorneys at law as such."

There have been some amendments to this law, but they are not involved in this case.

The facts disclosed are these: The State Bank of Sevier owned a cement plant at Sigurd, Utah. On May 5, 1930, it executed a deed of this property to one John Bowditch, Jr. This man was vice-president and general manager of the California Corporation. After he acquired the plant, it was operated under the name of the Cement Company by C. R. Jones, a director of the California Corporation. Mr. Jones took his instructions from Mr. Bowditch.

In 1932, Mr. Bowditch severed his connection with the California Corporation, and in April of that year, executed a deed of the plant to Golden, plaintiff and respondent in this case. The Plaster Company, defendant and appellant, contends that Golden is an employee of the California Corporation in its offices in the east. Golden was never in Utah, never gave any instructions to Jones about managing the plant, and never appeared personally in any of the transactions, nor at the trial.

The negotiations leading to the transfer of the property to the Plaster Company were conducted by C. R. Jones, with R. G. Campbell, president of the California Corporation. During the course of these negotiations, an agreement was entered into between the California Corporation and Edw. E. Jones Investment Company. R. G. Campbell signed for the California Corporation and C. R. Jones signed as secre-

tary for the Jones Investment Company. In that agreement we find the following:

"This Agreement made and entered into this 17th day of October, 1933, by and between *California* Stucco Products *Corporation*, a corporation of the State of Delaware, hereinafter called first party, and Edw. E. Jones Investment Company, a corporation of the State of Utah, hereinafter called second party.

"Whereas first party has an interest in certain mining and millsite property located in Sevier County, State of Utah, formerly owned by the State Bank of Sevier, Richfield, Utah, being the same property which said State Bank of Sevier conveyed to John Bowditch, Jr., and being the property which recently has been operated under the name of National Keene *Cement* Company, and particularly described as follows:

"And Whereas second party desires to purchase the interest of first party in said property, and first party is willing to sell said property to second party,

"* * * *and the balance of said purchase price, to wit: Twelve Thousand Nine Hundred Six and* $^{86}/_{100}$ *Dollars* (12,906.86), *on or before three years from date, all deferred payments to draw interest at the rate of six per cent per annum, interest payable semi-annually on May 1st and November 1st, of each year.*

"* * * *and that first party will accept as security for the payment of said Twelve Thousand Nine Hundred Six and* $^{86}/_{100}$ *Dollars, the balance of said purchase price, a first mortgage upon said property so conveyed;*

"That second party will assume and agree to pay all outstanding indebtedness incurred in the operation of the above described property under the name and style of National Keene *Cement* Company, or otherwise, and shall also retain and have for its own use and benefit all accounts receivable and assets of said corporation; and second party agrees to indemnify and save harmless the first party or *Thomas W. Golden* against any claim or demand made against said first party or *Thomas W. Golden* second party agrees to defend such suit at its own cost and expense.

"It is further understood and agreed between the parties hereto that *a corporation is to be formed for the purpose of taking over the title to the property above described, and that when said corporation shall have been formed and shall have assumed and agreed to pay all of the obligations of the second party,* as provided in this agreement, then and in that event the second party shall be discharged from further liability under this contract, except as to the payment of the oil royalties herein provided to be made." (Italics added. They emphasize

(the names we have adopted to distinguish the companies as well as matters significant on the merits of the case.)

The date of the agreement, 17th of October, 1933, is significant in that the Cement Company ceased doing business in October, 1933. Jones' employment as manager of that company, ceased as well. That company was unincorporated and apparently was limited in its business to the cement plant. The evidence indicates rather strongly that it was nothing but a name.

The Plaster Company, defendant and appellant, was apparently organized to comply with the last quoted paragraph of the agreement. The amount of the mortgage called for by the agreement is the same amount as covered by the note and mortgage sued upon. The reason for including the name of Thomas W. Golden in the agreement is left to conjecture. Upon the culmination of the negotiations between Campbell and Jones, and after the signing of the agreement, a deed signed and acknowledged in Pennsylvania by Golden and his wife, made to the Plaster Company, was delivered. The note and mortgage sued upon were executed in November, 1933, and covered the balance of the purchase price of the cement plant. Interest payments made upon the note and mortgage were forwarded by Mr. Jones, as treasurer of the Plaster Company, payable to the California Corporation. Pursuant to directions of Mr. Campbell, the note and mortgage were delivered by Mr. Jones to Robert Murray Stewart, an attorney of Salt Lake City, Utah, who participated with Mr. Campbell in the negotiations.

There was some confusion in the lower court's rulings upon the introduction of evidence. This may probably be best illustrated by dividing the evidence into two lines of proof: That in support of the contention that Golden was merely a figurehead; and that in support of the contention that the California Corporation was doing business in the state under the guise of the Cement Company. The former, of necessity, must be connected to Golden; the latter may be admissible without such connection.

To illustrate: In this case certain letters were offered in evidence, and ruled out by the court, which tended to prove that the California Corporation was directing the management of the Cement Company—its alleged alter ego in Utah. We copy two of them:

"January 30, 1931

"Mr. C. R. Jones

"Springville, Utah

"Dear Mr. Jones:

"It will be necessary for us to have a statement of the Keene Cement plant for 1930, in order to make up our income tax report for California Stucco Products Corporation.

"Will you kindly make it a point to send us this statement at the earliest possible moment? We would like to have it by the 10th of February, if at all possible.

"California Stucco Products Corporation

"(Signed)  R. G. Campbell

"Secy. & Treas."

"April 29, 1932

"Mr. C. R. Jones

"National Keene Cement Co.

"414 Judge Building

"Salt Lake City, Utah

"Dear Mr. Jones:

"It has been our practice to make a consolidated income tax report each year including the Cement Company. I recall in talking with you about this at one time that you made the statement that you would make your income tax report local, but it seems that the National Keene Cement was included in our report of 1930, and will be needed, according to our accountants, in the 1931 report.

"Will you kindly send us a copy of your 1931 report to enable us to complete the report we are now making up, which must be turned in by May 15th?

"Yours very truly,

"California Stucco Products Corp.

"(Signed)  R. G. Campbell."

In passing on those letters, the lower court said this:

"No question but what an inference might be drawn from these exhibits that the California Stucco Products Company claimed the property or some interest in it. I just can't see how their claim can

be used as against Mr. Golden in the absence of any connection with him. I think I will sustain the objection."

Those letters were not offered upon the theory of the first line of proof—that is, to prove that Golden was a mere figurehead. Had they been so offered, naturally they would have to be connected to Golden. But they were offered in support of the second line of proof that the California Corporation was doing business in this state under the name of the Cement Company. They were not hearsay as they were not offered as proof of the truth of their content, but were offered as proof of a course of conduct indicative of an intention to supervise the acts of the Cement Company. It is true that such evidence would become immaterial if appellant failed to prove that Golden was a mere figurehead; but that is a matter of deliberation upon the evidence after it is in, rather than a rule of admission of evidence. There was no pretense that the ruling was upon the theory that the evidence was offered out of order.

As one of the important issues of this defense is that of the engaging in business in this state by the California Corporation, the rejection of these letters was prejudicial to the Plaster Company's defense. There was other evidence along this line offered, but refused by the court, which should have been received.

It seems to be the theory of counsel for Golden that the Plaster Company is estopped to raise this defense; and that the evidence in support thereof is inadmissable as tending to vary the terms of a written instrument in that it substitutes another mortgage for Golden.

As to estoppel, our previous decision in *Dunn* v. *Utah Serum Co.*, 65 Utah 527, 238 P. 245, is adverse to respondent's contention. No more need be said upon that subject. See also *First National Bank* v. *Parker*, 57 Utah 290, 194 P. 661, 12 A. L. R. 1373.

The evidence offered in support of this defense does not tend to vary the terms of a written instrument. There is

only one person to whom defendant is liable upon this note and mortgage, if those instruments can be the basis of an action, and he is Golden. That he may be seeking recovery as an agent for another is immaterial if the instruments are valid. The evidence offered does not in the least tend to change that liability to another. Instead, the evidence offered is upon the relationship existing between Golden and the California Corporation. In so many words, this defense says that Golden is just another name for the California Corporation thus the contracts sued upon are void, because that corporation had not complied with our laws. This in no sense states that the terms of the note and mortgage are different than set out. It is in the nature of a question of identity—who is Golden?

The lower court, in its finding No. IV, found this:

"* * * That the plaintiff did not receive said note as the agent of the California Stucco Products Corporation; that the California Stucco Products Corporation is not the true owner thereof; that the California Stucco Products Corporation is a corporation organized and existing under the laws of the State of Delaware and has never complied with the laws of the State of Utah with reference to foreign corporations doing business herein; that said note and mortgage are valid subsisting obligations of the defendant due and owing to the plaintiff; that the California Stucco Products Corporation has no interest therein."

This is the only finding upon the merits of the defense. It is probably fair to say that it is a finding that Golden was not a figurehead for the California Corporation; and that the latter corporation did not comply with our laws. But as to the question of whether or not the corporation did business in this state, the finding leaves everything to conjecture.

This error may have arisen out of the fact that the allegation of doing business within the state is left out of the affirmative defense. It, too, leaves that matter to conjecture, However, the parties tried the case upon the theory of a violation of our laws pertaining to foreign corporations. Hav-

ing by their conduct treated the allegation as if included, the lower court should have directed that it be included as an amendment to the pleadings, and should have made a finding upon it, to make the case complete upon the issues and theory of the trial.

We can not infer from the result of the case that the lower court's finding upon this question of doing business within the state would have been either in the affirmative or in the negative. The finding to the effect that Golden was not a figurehead of the California Corporation was sufficient to uphold the result. Under such circumstances it would seem rather useless to return the case for correction of the error by a finding for or against doing business in the state of Utah if we believe that the finding upon the identity of the plaintiff is justified under the evidence.

As a matter of fact, it is rather hard to believe that Golden was other than an alter ego of the California Corporation. It is true that the evidence offered to prove that he was an employee of the corporation was properly ruled out, but when one considers how his name first came into the picture through the agreement; how all the transactions were carried through by officers and directors of the California Corporation; the significance of changes in title to the property as the personnel of the corporation changes, and as companies change; that interest payments were made to that corporation; and how Golden has been so conspicuously absent, even to the extent of failing to appear in the case by deposition attacking any of this evidence— when one considers these facts, there is more than a suspicion in one's mind that all is not as it should be.

Is it not a little strange that none of these officials of the California Corporation appear in the case, except Jones? He was a director of that corporation, and presumably knew something about it. He was manager of the Cement Company and presumably knew something about that. He dealt with Campbell, and presumably knew something of the background of the whole transaction—yet not one of the others

was present at the trial in person or by deposition to refute anything he said. He appeared on behalf of the Plaster Company, of which he was an official. Naturally he would be somewhat antagonistic in interests to Golden and the others, but there is no evidence justifying the conclusion that he was not telling the truth.

We are of the opinion that the great weight of the evidence is against the lower court's finding upon the question of the identity of the plaintiff.

Upon the question of the California Corporation's doing business in the State of Utah, the evidence admitted is not quite so strong. But very material evidence, we believe, was rejected by the lower court. We have referred to it herein. For that reason we are going to set the judgment and decree aside, and remand the case for amendment of the pleadings and a new trial to conform to this opinion.

In closing may we add two additional points: Assignment of Error XXII is this:

"The court erred in sustaining plaintiff's objection to the following question asked by defendant. 'Q. I will ask him. What was said with respect to the making of that deed, what conversation did you have with Mr. Campbell?' "

This was ruled out as hearsay as to Golden. The question was asked of Jones who dealt with Campbell leading up to the sale of the property by Golden, as grantor, and the delivery of the mortgage, with Golden as mortgagee.

We think this ruling was error. Golden is ostensibly seeking to recover as plaintiff in this action, upon the instruments which were the result of Campbell's efforts in the transaction referred to. One seeking to benefit from those transactions must treat Campbell as his agent. Therefore, he is bound by the conversations of that agent within the scope of that agency. That statements are made against the interest of the principal is not ground for ruling out the answer.

Assignment of Error XIX states that:

"The court erred in sustaining plaintiff's objection and motion to strike the following question asked by defendant: 'Q. You say you were manager?' " (Referring to the Cement Company.) " 'By whom were you employed? A. California Stucco Products Corporation.' "

This was stricken as a conclusion. Some confusion may arise over such a question as this if the court is not careful to keep in mind the purpose of the proffered testimony.

The relationship of agency being shown—the managership of the Cement Company—the question of who employed Jones, is intended, not as proving agency, but identifying the party who was instrumental in producing that agency status. Had the answer been "Bowditch," as it was once answered, it would not have been a conclusion. But when the answer is given that a corporation did the employing, that is a conclusion for the following reason: A corporation can only act by its officers. Thus when the answer is as given, it assumes that the officer who did the employing was acting within his authority upon behalf of that corporation; whereas, he may have been acting in another capacity, or without authority. This reason for holding the answer a conclusion, in this case, is strongly evident because of the fact that the agency established was not between Jones and the California Corporation, but between Jones and the Cement Company. If Bowditch, general manager of the California Corporation, was the party with whom Jones had contact for employment as manager of the Cement Company, the only reason for saying that the California Corporation employed Jones would be, that, because Bowditch was general manager of that corporation it must be taken conclusively that he acted as a corporation agent in that contact with Jones. The question should have elicited who the person was with whom Jones had contact. That would be one bit of evidence. The relationship of that person to the California Corporation would be another bit of evidence. The two together, taken with other facts, might legitimately lead the court to con-

clude that it was the California Corporation that employed Jones as manager of the Cement Company. Such a conclusion, with other facts, might legitimately lead the court to conclude that the Cement Company was, as a matter of fact, just another name for the California Corporation. This latter conclusion is the goal at which the question was aimed. We have set out the chain of reasoning which could lead up to it. It has in it conclusions that may be adopted by the court but should not be adopted by the witness in this case, as they are matters in issue.

But it is not the only chain of reasoning that the court might adopt. It might well arrive at the conclusion that Jones was simply an agent of the California Corporation who had assumed the Cement Company name. As to whether this was a proper line of reasoning to follow would depend upon whether or not there were others interested in the Cement Company.

We have covered all the material assignments involved in this case, though we have not referred to all evidentiary matters which would be subject to the principles herein set out. However, on retrial, we are confident that the lower court will properly rule upon the others in the light of what we have said.

The judgment and decree are set aside, and the cause remanded for amended pleadings and retrial. Costs to appellant.

MOFFAT, C. J., and WOLFE, LARSON, and McDONOUGH, JJ., concur.