## SHAW v. JEPPSON.

No. 7741.   Decided January 12, 1952.   (239 P. 2d 745.)

See 20 C. J. S., Corporations, sec. 1834. Real parties in interest, 39 Am. Jur., Parties, secs. 10, 11.

*Miner & Jones, Esqs.,* Salt Lake City, for appellant.

*Robert M. Yeates,* and *Cheney, Marr, Wilkins & Cannon,* all of Salt Lake City, for respondent.

CROCKETT, Justice.

Plaintiff procured an injunction against the defendant from teaching dancing in competition with her. The controversy on this appeal is over an effort of the defendant to get another plaintiff in, so she can show it is disqualified from suing her.

Ara M. Dimond (now Jeppson) was hired as a dancing instructor by the plaintiff, Helene Shaw. The contract of employment provided that if she left plaintiff's employ she would not teach nor dance for hire within a certain area, that is, in Salt Lake County, or any county adjacent to it or within 25 miles of any Arthur Murray dance studio for a period of two years; if she breached this covenant, she agreed (1) to pay on demand a promissory note in the sum of $500 as compensation for dancing instruction and training she would receive; and (2) that she recognized that it would cause irreparable injury to the plaintiff's business and consented to an injunction against her breaching said covenant. After approximately one and one-half years employment, she quit without stating any reason therefor and began teaching dancing within the proscribed area.

The plaintiff commenced this action seeking three things: (a) to collect the promissory note, (b) for money damages for violating the covenant, and (c) to enjoin her from continuing to do so. Upon the trial, the parties stipulated that the defendant had breached the covenant; the plaintiff waived any money damages caused prior to the trial; and also waived any right to collect on the promissory note. The only issue presented was as to plaintiff's right to the injunction. The trial court ruled for the plaintiff and entered a decree ordering the defendant to discontinue violation of the covenant. Defendant appeals.

The defendant makes no claim that the restriction is not a reasonable and lawful one and necessary to protect the good will of the plaintiff's business. The only defense she asserts to the action is based on these two propositions: that plaintiff, Helene Shaw, is not the real party in interest but that Arthur Murray, Inc., is such in fact; and that it is a foreign corporation doing business in Utah without complying with Sections 18-8-1 and 2, U. C. A. 1943, and is therefore disqualified from suing herein by Section 18-8-5.

Defendant admits that Arthur Murray, Inc. is a foreign corporation and that it has not qualified to do business in the State of Utah and does not dispute that if such corporation were the real party in interest and doing business in the State of Utah it could not maintain this suit. *First National Bank of Price* v. *Parker,* 57 Utah 290, 194 P. 661, 12 A. L. R. 1373; *Dunn* v. *Utah Serum Company,* 65 Utah 527, 238 P. 245; *Franklin Building & Loan Company* v. *Peppard,* 97 Utah 483, 93 P. 2d 925.

Consideration of the defendant's challenge that the plaintiff is not the real party in interest in the suit requires a brief, factual survey of the relationship between the parties as shown by the contracts between them and their methods of operation. The plaintiff, Helene Shaw, has a licensing agreement with Arthur Murray, Inc. of New York per-

mitting her to use the name, dances, instruction books and methods of the licensor, but she is obliged to do so within certain limitations. For this she pays 10% of her gross receipts, plus 5% to go into a fund for advertising and certain other contingencies.

The plaintiff is the originator and entrepreneur of the business she is conducting. She filed an affidavit that she personally was doing business under an assumed name, Arthur Murray Studios, and registered that name for herself in the office of the Secretary of State. She procured her own studio, made all the arrangements about rental, utilities and other incidentals which it is her sole responsibility to pay; she owns all of the assets of the business including the furniture, fixtures, files, records and instruction books, the lease, accounts receivable and the licensing agreement referred to. The hiring of personnel, the payment of their salaries and all of the expenses of the business is upon her. In fact, she has full responsibility for managing all phases of the business, arrangements for lessons, group dances, and courses. And it is she who gets the benefits of any profits made or suffers any loss that may be incurred in the business.

It is true that in order to protect the name and good will of the licensor, the licensing agreement places some restrictions upon the plaintiff in that Arthur Murray, Inc. has the right to make certain requirement with respect to types of dancing taught, the character of the studio, salaries paid and not employing personnel found to be objectionable. It also requires plaintiff to keep records and to make reports of a general nature showing the lessons taught and the gross receipts which is the basis of payment for the license. This report does not show the wages paid nor the operating expenses in connection with the business because the licensor does not share in the profits and is not responsible for the loss and therefore is not concerned whether the plaintiff's business is profiable or otherwise. The contract

expressly provides that the licensor is not responsible for salaries or other debts incurred by the plaintiff. The evidence is that the licensor has never exercised any of its prerogatives of supervisory control over the plaintiff's business. Actually no representative of Arthur Murray, Inc. has ever been at the studio. The fact is that it has no *direct* supervisory control over the plaintiff's business; the requirements imposed by the agreement are conditions under which the plaintiff can continue to use the name and methods of Arthur Murray, Inc., a breach of which could only become the basis of a cancellation of the license upon certain notice specified in the contract. Only in this indirect way of cancelling the license, could licensor interfere with the management and operation of the plaintiff's business.

The defendant Ara M. Dimond Jeppson is not a party to the license agreement and has no direct contractual relationship with Arthur Murray, Inc. The plaintiff hired the defendant, fixed her hours, specified the terms and conditions of employment and set and agreed to pay her salary. The defendant's contract with the plaintiff was one of employment for the plaintiff in connection with which the defendant agreed to the covenant we are concerned with. The mutual obligations of the contract run between the plaintiff and the defendant, and Arthur Murray, Inc. is referred to in it as a third party, and under its provisions, there is no theory upon which the defendant could have held Arthur Murray, Inc. responsible for her wages or have imposed any other obligation upon it.

Upon the facts as delineated above the court found that the plaintiff was not the alter ego, agent, servant or employee of Arthur Murray, Inc.; that such corporation was not doing business in the State of Utah and ruled that the plaintiff in her own right was entitled to enforce the covenant against the defendant and upon such findings granted the injunction.

The phase of this case under review, that is, pertaining to the injunction is equitable. Therefore, although the court will review the evidence, it will not disturb the findings of the trial court unless they are clearly against the weight of the evidence. *Stanley* v. *Stanley,* 97 Utah 520, 94 P. 2d 465.

Where the plaintiff was thus free to independently manage her own business, the fact that the licensor compelled her to comply with certain requirements as a condition to continuing the privilege of the license, does not lead to the conclusion that the licensor was going business in the State of Utah by the licensee as its alter ego or agent. *McMaster, Inc.,* v. *Chevrolet Motor Company,* D. C., 3 F. 2d 469; *State* v. *Ford Motor Company,* 208 S. C. 379, 38 S. E. 2d 242, which latter case distinguishes between doing business in a state in such a manner as to require a corporation to file its articles, pay fees and comply with the statutes to qualify to do business therein, as compared with merely having an agent operating with sufficient authority to render the corporation amenable to service of process on him such as in *International Text Book Company* v. *Pigg,* 217 U. S. 91, 30 S. Ct. 481, 54 L. Ed. 678, cited by plaintiff, where a corporation was held to be doing business in Kansas through its agent who maintained an office, sold correspondence courses, collected and remitted fees, made daily reports, received a regular salary and where many people were currently taking courses.

Defendant claims that *Golden* v. *American Keene Cement & Plaster Company,* 98 Utah 23, 95 P. 2d 755, in a case squarely in point for her. Golden attempted to foreclose a mortgage which had been taken in his name, it appearing that he was in fact merely the alter ego of California Stucco Products Company, a foreign corporation. There is a significant and controlling difference: Golden had no personal interest in the cause of action whatsoever, such as Mrs. Shaw has in the instant case.

There is no necessity for indulging in niceties as to whether the plaintiff may be an agent of Arthur Murray, Inc. for some purposes, as that is immaterial to the issues in this case.

Insofar as her right to sue is concerned, the determination made is amply justified. The plaintiff as the owner of the business exacted this covenant from the defendant for the purpose of protecting her own interests. She is entitled to enforce it on her own behalf. She would not be precluded from doing so merely because a foreign corporation, disqualified from suing, might also have an interest in the contract and may incidently derive an indirect benefit from plaintiff's enforcement of her own rights.

The situation would be different if Arthur Murray, Inc. were suing. But it is not, and is seeking nothing in this action. Whether it could or could not enforce this covenant, were it qualified to sue, is of no instant concern. Under modern law there is no question but that where there are joint promisees, having separate or severable rights, they may enforce their rights separately unless some obvious hardship or injustice is wrought by such procedure; see Vol. 4 Corbin on Contracts, Secs. 939 and 940 and numerous cases there cited under Note 74. The author states in Sec. 939:

"* * * Even if it is a single and individual performance that is promised to two or more promisees, and the promise contains no words of 'severance', if breach of the promise causes separate and distinct injuries to the promisees, justice and convenience may at times be served by permitting them to maintain separate actions for damages * * *."

Suit by one promisee is permissible although the other may be under a disability to sue. It seems obvious that one who has a right violated, should not be prevented from redress merely because another, who may be disqualified or unavailable in the suit, may share the right. In the case of

*Hoyt* v. *New Hampshire Fire Ins. Co.,* 92 N. H. 242, 29 A. 2d 121, 148 A. L. R. 484, three owners of undivided interests in property were insured against fire by a single policy, it was held that two of them could recover the amount of their loss according to their interest, even though the third set the fire himself and could recover nothing. See also *Satler Lumber Co.* v. *Exler,* 239 Pa. 135, 86 A. 793.

The reason the defendant has the right to have a cause of action prosecuted by the real party in interest is so that the judgment will preclude any action on the same demand by another and permit the defendant to assert all defenses or counterclaims available against the real owner of the cause. *Chickasaw Lumber Co.* v. *Kunkel,* 183 Okl. 347, 82 P. 2d 1003; *Meyers* v. *Bank of America Nat. Trust & Savings Ass'n,* Cal. App., 69 P. 2d 868, subsequent opinion, 11 Cal. 2d 92, 77 P. 2d 1084. Defendant will suffer no difficulty in this case on that score. Her attempt to make Arthur Murray, Inc. the plaintiff in this case is not to guard against any such disadvantage, but such effort is apparently so she could then contend that the action may not be maintained against her. It is obvious that plaintiff is much more vitally and directly affected by defendant teaching dancing in Salt Lake County in violation of the covenant than is Arthur Murray, Inc. The trial court correctly ruled that she was entitled to the injunction on her own behalf.

Judgment affirmed. Costs to respondent.

WADE, McDONOUGH and HENRIOD, JJ., concur.

WOLFE, Chief Justice (concurring in part—dissenting in part).

My concurrence is limited to the reason stated by the majority opinion that:

"The plaintiff as the owner of the business exacted this covenant from the defendant for the purpose of protecting her own interests. She is entitled to enforce it on her own behalf."

In *Allen* v. *Rose Park Pharmacy*, ... Utah ..., 1951, 237 P. 2d 823, 826, we held:

"Restrictive covenants are generally upheld by the courts where they are necessary for the protection of the business \* \* \* and no greater restraint is imposed than is reasonably necessary to secure such protection."

But I am not prepared to concur in the inference stated in the majority opinion that Arthur Murray, Inc. of New York City and Helene Shaw, d/b/ Arthur Murray Dance Studio of Salt Lake City, are joint promisees. The contract here being sued upon is a contract of employment signed by Helene Shaw and Ara M. Dimond [now Jeppson]. It was apparently drafted by Arthur Murray, Inc. and the restrictive covenant here being enforced was obviously included for the protection of Arthur Murray, Inc. as well as Helene Shaw. Arthur Murray, Inc. may be a third party beneficiary, but it is not clear to me that it is a primary party to the Shaw-Jeppson contract. To so infer seems unnecessary to this decision. This proposition is not mentioned in the briefs.