467 P.2d 410

M & S CONSTRUCTION AND ENGINEERING COMPANY, a Utah corporation, Plaintiff and Appellant,

v.

CLEARFIELD STATE BANK, a Utah corporation, Defendant and Respondent,

v.

Vern M. SMITH, Russell D. Stoker and James H. Mendenhall, Defendants and Appellant.

No. 11694.

Supreme Court of Utah.

March 31, 1970.

Robert D. Moore, Salt Lake City, Felshaw King, of King & King, Clearfield, for appellants.

Richard W. Campbell, of Olmstead, Stine & Campbell, Ogden, for respondent.

CALLISTER, Justice.

This is the second appeal by plaintiff, M & S Construction and Engineering Company, in its action for an alleged breach of a loan agreement against defendant, Clearfield State Bank. On the prior appeal, this court reversed and remanded the case for a trial on all counts including a counter-claim and cross-claim.[1]

Shortly prior to the commencement of the second trial, the defendant bank filed a motion to amend the pretrial order to add two additional defenses, which motion the court granted. The bank in its amended

1. 19 Utah 2d 86, 426 P.2d 227 (1967).

pleading asserted (a) that plaintiff was without capacity to maintain the action for the reason that its corporate rights, powers, and privileges had been suspended by the State of Utah pursuant to Sec. 59–13–61, U.C.A.1953, on about March 31, 1966, and such suspension had continued since that date; (b) that plaintiff was not the real party in interest, since prior to the commencement of its action, it had assigned its cause of action to Steenberg Construction Company.

Defendant filed a motion to dismiss on the ground of the aforementioned defenses. Plaintiff filed an affidavit in opposition to defendant's motion, wherein plaintiff, through its president, deposed that it had entered into a default and completion agreement on November 6, 1963, with Steenberg Construction Company in which it had assigned all its right, title and interest in and to all its assets including unliquidated claims. Plaintiff asserted that the parties did not intend to assign plaintiff's cause of action by said agreement, and if such were the effect, it constituted a mistake. The affidavit further recited that the assignment was made only as a security arrangement, and in any event on the 14th of May, 1969, Steenberg had relinquished or reassigned the claim, as witnessed by an attached exhibit. Plaintiff further swore that on May 19, 1969, it was relieved from any suspension for the nonpayment of taxes and had been reinstated by the State of Utah. The exhibit accompanying the affidavit was an agreement executed by Steenberg and M & S, wherein it is recited that the parties did not intend to include and did not include in the assignment of the assets of M & S any of the claims or causes of action M & S had against Clearfield State Bank. Steenberg represented that it had made no claim and makes no claim to the causes of action of M & S against the bank. Furthermore, Steenberg relinquished and/or assigned to M & S any and all claims which Steenberg might have or claim to have to the causes of action of M & S against the bank.

Plaintiff asked leave of the court to file an amended complaint, wherein it alleged that Steenberg and M & S did not intend to include plaintiff's claim against the bank in the assignment of November 6, 1963, and if it be so interpreted, it constituted a mistake. Plaintiff further pleaded that if the cause herein sued upon were included in the assignment, the claim had been reassigned by Steenberg. The trial court denied plaintiff's motion to amend the complaint.

The trial court dismissed plaintiff's complaint with prejudice and granted defendant judgment on its counterclaim and cross-claim.

In the trial court's order granting defendant's motion to dismiss, the court found that plaintiff's cause of action accrued on October 25, 1963; that M & S assigned its cause on November 6, 1963; and that it

commenced its action on December 19, 1963. The court held that plaintiff's action must be dismissed on the ground that upon the suspension of plaintiff's corporate rights, powers, and privileges, it lost the power to continue the action, and plaintiff's cause of action abated. Such defense accrued to defendant by reason of plaintiff's suspension and continued notwithstanding plaintiff's subsequent reinstatement. The court further held that plaintiff was not the real party in interest, because prior to the commencement of the action, it had assigned the claim upon which it was based to Steenberg. The court ruled that any subsequent reassignment to plaintiff would not overcome defendant's defense that plaintiff was not the real party in interest, as required by Rule 17(a), U.R.C.P.

 After the determination of the trial court, this court held in Mackay & Knobel Enterprises, Inc. v. Teton Van Gas, Inc.[2] that the action of a suspended corporation should not be dismissed on the ground that it lacked capacity to maintain the suit. This court observed that while a suspended corporation is under some disabilities as provided by Sec. 59–13–62, U.C. A.1953, there is no express provision that it is without capacity to sue. The trial court erred by its dismissal of plaintiff's action on the ground that it lost its power to continue the action upon its suspension for nonpayment of its taxes.

Was the trial court compelled by Rule 17(a), U.R.C.P., to dismiss plaintiff's complaint? The pertinent section provides:

Every action shall be prosecuted in the name of the real party in interest; * *.

The Federal Rule 17(a) was amended in 1966 by the addition of the following sentence:

No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

Defendant contends that since Utah has not enacted this amendment the principle involved therein is inapplicable to the instant action. This argument is refuted in 3A Moore's Federal Practice (2d Ed.), Sec. 17.15–1, pp. 601–603, wherein it is observed:

* * * This amendment was originally a contribution from admiralty, and was later extended to civil actions as well. It is believed the amendment restates the better decisions, and it is not a departure from the practice as it had recently developed in both admiralty and civil actions prior to 1966.

2. 23 Utah 2d 200, 460 P.2d 828 (1969).

The purpose of the provision is to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made. Thus its main thrust is to allow a correction in parties after the statute of limitations has run, despite the valid objection that the original action was not brought by the real party in interest. The provision was not intended, however, to authorize fictitious name suits.

Moore further explains, Id. Sec. 17.01[8], pp. 24–25:

The provision that no action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed, after the objection has been raised, for ratification, substitution, etc., is added simply in the interests of justice. In its origin the rule concerning the real party in interest was permissive in purpose: it was designed to *allow* an assignee to sue in his own name. That having been accomplished, the modern function of the rule in its negative aspect is simply to protect the defendant against a subsequent action by the party actually entitled to recover, and to in-

sure generally the judgment will have its proper effect as res judicata.[3]

In Crowder v. Gordons Transports, Inc.,[4] the court quoted the following comment of Advisory Committee on the 1966 Amendment to Rule 17(a):

"This provision keeps pace with the law as it is actually developing. Modern decisions are inclined to be lenient when an honest mistake has been made in choosing the party in whose name the action is to be filed—in both maritime and nonmaritime cases. See Levinson v. Deupree, 345 U.S. 648, [73 S.Ct. 914, 97 L.Ed. 1319] (1953); Link Aviation, Inc. v. Downs, [117 U.S.App.D.C. 40], 325 F. 2d 613 (D.C.Cir. 1963). The provision should not be misunderstood or distorted. It is intended to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made * * *." 28 U. S.C.A. Rule 17, Cum.P.P. Notes p. 5.

■ In the instant action, the sole basis to support the assertion that plaintiff was not the real party in interest was one provision in a lengthy agreement entitled "Default and Completion Agreement." Contained therein is a recitation that Steenberg

---

3. See Shaw v. Jeppson, 121 Utah 155, 163, 239 P.2d 745 (1952), "The reason the defendant has the right to have a cause of action prosecuted by the real party in interest is so that the judgment will preclude any action on the same demand by

another and permit the defendant to assert all defenses or counterclaims available against the real owner of the cause * * *"

4. 387 F.2d 413, 418 (C.A. 8th, 1967).

entered into a governmental contract for the construction of Lost Creek Dam. Steenberg entered into a subcontract with M & S for the performance of a portion of the work. M & S and certain sureties executed a performance bond guaranteeing the performance of M & S of the subcontract. M & S and its sureties defaulted and were unable to continue performance. The parties, therefore, agreed to allow Steenberg to take over and complete the subcontract at the expense of M & S and its sureties. M & S agreed to take all necessary action to make the personnel and equipment of M & S available for completion of the contract work to the extent that such arrangements were practical and otherwise consistent with the provisions set forth for transfer of assets from M & S to Steenberg.

Steenberg agreed to take charge and commence performance of the balance of work remaining to be done under the M & S subcontract. Steenberg agreed to maintain accurate cost records of all charges and expenses. Steenberg agreed that upon completion and acceptance of the subcontract work it would remit to M & S or hold subject to the directions of M & S, its successors or assigns any balance of funds after deduction of proper charges from the income realized from the subcontract work.

M & S transferred and assigned to Steenberg all of its right, title, and interest in and to all assets owned by it including but not limited to retained funds, accounts receivable, equipment, prepaid insurance, unliquidated claims, etc.

When this assignment is construed in context with the other provisions of the agreement, the conclusion that the instant cause of action was included appears unwarranted. The purpose of the agreement was to enable Steenberg to complete the subcontract of M & S; to aid in the accomplishment of this performance M & S assigned all of its assets including its working capital in every form. The pursuit of a breach of contract action based on an oral agreement between plaintiff and the bank would in no way assist Steenberg in the completion of the subcontract. There is no basis in fact to construe the words "unliquidated claims" as encompassing this particular cause of action when the contract is considered as a whole and the intentions of the parties are manifested.

Defendant was further protected by the agreement of May 14, 1969, wherein Steenberg relinquished any claim in the instant cause of action which defendant feared it might have.

In Dubuque Stone Products Co. v. Fred L. Gray Co.[5] the court stated:

> One of the basic purposes of F.R.Civ. P. 17(a) is to protect the defendant from further unnecessary litigation.

5. 356 F.2d 718, 723 (C.A. 8th, 1966).

"If the judgment, if any, by the plaintiff will protect the defendant from future annoyance or loss, and where, as against the parties suing, the defendant can urge any defenses he could make against the real owner of the claim, then there is an end of the defendant's concern as to the protection he is afforded by having the claim prosecuted by the real party in interest. [Citations omitted.]"

The final dispute on this appeal is whether defendant's judgment on its counterclaim and cross-claim should remain undisturbed. It was recited in defendant's judgment that it was held in abeyance until after a determination of the issues in plaintiff's complaint. Since the complaint had been dismissed with prejudice, the court disposed of the remaining claims by granting defendant judgment.

Rule 13(h), U.R.C.P., provides that judgment on counterclaims and cross-claims may be rendered in accordance with Rule 54(b).

Rule 54(b), U.R.C.P., provides:

When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, a final judgment may be entered upon one or more but less than all of the claims only upon an express determination by the court that there is no just reason for delay and upon an express direction for entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates less than all the claims shall not terminate the action as to any of the claims, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims.

Since this case is being remanded for trial, less than all the claims presented in the action have been adjudicated; and, there has been no express determination by the court as provided in Rule 54(b). The defendant's claims are, therefore, subject to revision.

As this court held on the previous appeal in this case:[6]

The rights of cosigners for M & S against the bank and vice versa are so enmeshed with the circumstances of this case as to warrant a remand of this case for another trial on all counts,—and it is so ordered.

The judgment of the trial court is reversed and remanded. Costs are awarded to plaintiff.

CROCKETT, C. J., and TUCKETT, ELLETT and HENRIOD, JJ., concur.

6. Note 1, supra.