Paul SHURTLEFF, Max S. Andrews, Ned E. Shurtleff, Harvey R. Carson and Garry R. Cole, General Partners, dba American Sales Company (ASCO), a Utah limited Partnership, Plaintiffs and Respondent,

v.

JAY TUFT AND COMPANY, a Utah Corporation, Defendants and Appellants.

No. 16470.

Supreme Court of Utah.

Dec. 17, 1980.

James A. McIntosh of McMurray, Anderson & McIntosh, Salt Lake City, for defendants and appellants.

Clark W. Sessions of Watkiss & Campbell, Salt Lake City, for plaintiffs and respondents.

STEWART, Justice:

This action was brought to recover unpaid rentals due under the lease of a backhoe and the cost of repairs made on the backhoe during the lease term. The defendant filed a counterclaim based on breach of express and implied warranties and negligence. Following a nine-day trial, the jury handed down a verdict in favor of plaintiffs. The defendant moved to amend the judgment or in the alternative for a new trial, and the trial court denied the motion. On appeal defendant asks that the judgment be set aside insofar as it represents the cost of repairs to the backhoe and that defendant be granted a new trial on the remaining issues with regard to the delinquent rentals and loss of profits.

Defendant, Jay Tuft and Company, is engaged primarily in building water and sewer lines for municipalities under competitive contract bidding. The individual plaintiffs are general partners of American Sales Company ("ASCO"), a limited partnership which sold and rented backhoes and various other types of earth-moving equipment. In March 1977 the parties executed an equipment lease agreement covering the lease by defendant of one used American hydraulic backhoe. The lease term was to be for a minimum of thirty days and such additional time as defendant would require the backhoe. The monthly rental was $4,800, plus applicable taxes, with rental payments due and payable every thirty days. The agreement could be terminated by either party upon five days' written notice.

The backhoe had previously been leased by the defendant under two separate lease agreements. Prior to the commencement of the present lease, the backhoe received a final servicing. Almost immediately after defendant took possession of the backhoe, the left axle broke, and defendant notified Harvey Carson, one of the general partners of ASCO. Carson dispatched three mechanics from Shurtleff & Andrews Construction Company ("Shurtleff & Andrews") to repair the axle, and when they arrived at the job site they determined that there were several other problems that necessitated repairs. Defendant was not charged with the cost of these repairs.

The backhoe remained in defendant's possession under the lease from March 1977 to January 1978. During this period a series of mechanical problems required further repairs amounting to nearly $16,000. The repairs, the cost of which is challenged by defendant in this action, were made primarily by Ray Baldwin and other mechanics employed by Shurtleff & Andrews, who performed services at the request of ASCO. In November 1977 defendant could no longer operate the backhoe because of serious problems with the hydraulic system. In spite of major repairs, malfunctions continued, and defendant obtained other backhoes

to enable it to complete its contractual obligation. The substitute backhoes were smaller and less efficient and allegedly resulted in a substantial loss of profits to defendant.

Defendant retained possession of the backhoe but refused to make the rental payments from October 1977 through January 1978, totaling $20,167.75. Defendant also refused to pay charges for parts, labor, and repairs in the sum of $15,651.73. Its position was that plaintiffs were obligated by the lease agreement to assume responsibility for the repair charges and that the contractual rental payments should be offset by defendant's own losses for downtime, repairs, loss of profits, and other consequential damages in connection with the repeated breakdowns of the backhoe. Following notice that plaintiffs intended to terminate the lease agreement unless full payment was made, plaintiffs repossessed the backhoe and initiated this action.

On appeal defendant contends that the jury verdict in plaintiffs' favor was not supported by the evidence and that the trial court committed prejudicial error as to the admissibility of opinion and expert testimony and as to jury instructions.

We consider first defendant's contention that the money judgment representing cost of repairs to the backhoe was not supported by the evidence and was based upon speculation, conjecture, passion, and prejudice. In support of its argument, defendant asserts that:

1. Defendant had no contractual obligation to pay for the repairs because: (a) under the lease agreement the lessor was responsible for repairs; (b) it is the custom and usage in the industry for the lessor to pay for all repairs except those occasioned by operator abuse or the lessee's negligence, certain items excepted; (c) the monthly rental fee included a reserve for repair coverage, and ASCO would be unjustly enriched if it recovers for cost of repairs; and (d) the Shurtleff & Andrews mechanics were incompetent and, in fact, were responsible for the breakdown of the backhoe.

2. ASCO is not the real party in interest, because the alleged indebtedness for repairs was incurred in using the services of mechanics employed by Shurtleff & Andrews Construction Company, not by ASCO.

When the evidence is in conflict, this Court favors the verdict with a presumption of validity and assumes the jury believed the testimony that supports its verdict. *Lee v. Howes*, Utah, 548 P.2d 619 (1976); *Gilhespie v. DeJong*, Utah, 520 P.2d 878 (1974).

We initially note and reject as patently without merit defendant's suggestion that the jury verdict was erroneous because the seven women on the jury did not understand the technical aspects of the workings of the backhoe in connection with the repairs made to it. Furthermore, the issue of the jury panel makeup was not raised prior to this appeal and may not be asserted for the first time here.

## CONTRACTUAL LIABILITY FOR REPAIRS

■ Paragraph 6 of the lease states: "[T]he lessee shall keep the equipment in good repair and condition and will return the equipment in as good condition when leased, including final servicing, reasonable wear and tear excepted." The jury was charged with the responsibility of construing the contract language and resolving what was a factual dispute as to the intention of the contracting parties under this language as to liability for repairs. The language of the contract regarding repairs does not require the conclusion as a matter of law that the lessor rather than the lessee must pay the cost of the backhoe repairs, nor can this Court rule that reasonable persons could not have found in favor of plaintiffs after hearing the conflicting testimony of the parties.

Evidence of course of dealing and industry custom and usage was in dispute and presented a question for the jury. There was testimony that the lease rate did not

include a reserve for repairs, contrary to defendant's contention, and that the rental price would have been significantly higher had it included such a reserve. Testimony by plaintiffs' witnesses rebutted defendant's contention that it was an established ASCO policy to pay for the types of repairs that were made in the present case. And despite the numerous breakdowns in the mechanical systems of the backhoe detailed by defendant as suggestive of negligence in making repairs, the evidence does not require a finding that Baldwin or any other mechanic was negligent as a matter of law. It was within the prerogative of the jury to find the defendant contractually liable for the cost of repairs.

The evidence in the record gives ample support for the jury verdict. During the term of the lease the backhoe was under the exclusive control of the defendant. It was operated by defendant on construction projects miles from the plaintiffs' business location. Employees of defendant, as well as of Shurtleff & Andrews, were involved in the servicing and repair of the machine. The mechanical problems clearly exceeded what could be termed "reasonable wear and tear." Among explanations offered for the contamination of the hydraulic system that necessitated many repairs was defendant's failure to oil the equipment properly, to follow proper warm-up procedures, or to change the filters as needed. There was no evidence that the filter had been changed at all during the lease period, although there was testimony that it should have been changed at least three times during that period. There was also evidence that problems with an axle and with the charging system were due to improper operation and use by defendant.

Defendant contends further that ASCO is not the real party in interest entitled to collect a judgment based on the cost of repairs to the backhoe because the work was done by Shurtleff & Andrews, and the work orders signed by defendant's employees constituted a promise to pay that company, if anyone, and not plaintiff.[1] Defendant contends that if ASCO is allowed to recover for the amount of the judgment, defendant could be subject to double liability in the event Shurtleff & Andrews were to sue to collect on the work orders for repairs performed by its employees.

 A defendant has the right to have a cause of action prosecuted by the real party in interest to avoid further action on the same demand by another and to permit the defendant to assert all defenses or counterclaims available against the real owner of the cause. *Shaw v. Jeppson*, 121 Utah 155, 239 P.2d 745 (1952). Under the circumstances of this case it is clear that the purpose of the rule has been satisfied. When repairs were required, defendant directly notified ASCO, specifying the nature of the problem. ASCO directed Shurtleff & Andrews to dispatch mechanics to repair the backhoe, and ASCO was billed for the services rendered. ASCO in turn billed defendant. Shurtleff & Andrew did not seek payment from the defendant. This procedure was also followed when repairs required specialized training of other repairmen. Bills for services rendered were submitted to ASCO, not to defendant. Plaintiffs' obligation for the cost of repairs was therefore established by the record.

### EXPERT OPINION

Defendant contends it was prejudicial error for the trial judge to allow Ray Baldwin to testify as an expert that the backhoe had been maintained improperly. Defendant argues that this was the controlling point to be determined by the jury and that the facts testified to by Baldwin were inadequate to support his conclusion. Defendant

---

1. Defendant points out that there is no evidence in the record that any assignment was made to ASCO that entitled them to sue for payment. This issue had not been raised by answer or counterclaim, and the untimeliness of the motion would itself be sufficient justification for the trial court's denial of the motion.

also characterizes as prejudicial error the trial judge's refusal to allow Harold Babcock to testify as an expert regarding the merchantable condition of the backhoe.

Rule 56(2)(b), Utah Rules of Evidence, requires that expert testimony be within the scope of "special knowledge, skill, experience or training possessed by the witness." The trial judge has the primary responsibility for determining whether a particular witness qualifies as an expert. *Webb v. Olin Mathieson Chemical Corp.*, 9 Utah 2d 275, 342 P.2d 1094 (1959). This Court will afford the trial court some leeway in making such a determination and will not disturb its ruling unless it was clearly in error. *Batt v. State*, 28 Utah 2d 417, 503 P.2d 855 (1972); *Webb v. Olin Mathieson Chemical Corp., supra.*

■ Defendant does not dispute Baldwin's qualifications as an expert but asserts that the foundation for his opinion was inadequate because he had never observed, nor did he have personal knowledge of, any specific acts by employees of defendant that would constitute improper maintenance. Plaintiffs elicited Baldwin's expert opinion after establishing that he had performed the final servicing on the backhoe immediately prior to the lease to defendant and that during the term of the lease he inspected and repaired the backhoe on numerous occasions. At the conclusion of extensive questioning, Baldwin was asked, based on his inspection and the work he performed on the machine, to give his judgment as to whether the machine had been maintained in a proper condition. His expert opinion was that it had not. He did not testify as an eyewitness to acts of abuse by defendant's employees, nor indeed was that necessary as long as the conclusion rested on an adequate foundation. The jury was entitled to consider this opinion evidence, even though it may have embraced the ultimate factual issue to be decided by the jury for whatever weight it felt it deserved. *Edwards v. Diderickson*, Utah, 597 P.2d 1328 (1980); Rule 56(4), U.R.E. The trial court did not err in admitting Baldwin's testimony.

■ Defendant also argues that the exclusion of Harold Babcock's opinion as to the merchantability of the backhoe was prejudicial because it deprived the defendants of "the required testimony on this critical issue." Babcock was asked if he had an opinion whether a leased backhoe that encountered the problems experienced with the subject backhoe would be merchantable or not. The trial judge sustained an objection to the question on the ground the witness was not qualified to answer it. Defendant contends that by refusing to allow expert opinion testimony as to the merchantable condition of the backhoe, the trial judge permitted the jury to speculate on whether the backhoe would pass without objection in the trade and would be fit for the ordinary purposes for which the backhoe was to be used. However, it is not necessary to prove product defects by an expert witness as distinguished from other proof. *Lucas v. Firestone Tire & Rubber Co.*, 458 F.2d 495 (5th Cir. 1972); *Burrus v. Itek Corp.*, 46 Ill.App.3d 350, 360 N.E.2d 1168 (1977). Witnesses testified at length regarding the mechanical problems of the backhoe and the question of its merchantability. We cannot conclude that the trial court committed prejudicial error in determining that Babcock did not possess the special knowledge of the subject matter that was required for him to give expert opinion testimony on this issue.

## ADMISSION OF DOCUMENTARY SUMMARY

■ Defendant also characterizes as prejudicial error the trial court's exclusion of defendant's Exhibit "D–44," a summary prepared by Mrs. Tuft which itemized the problems with the backhoe based upon information from defendant's reports, invoices, telephone memoranda, and Mr. Tuft's diary. We find no error in the court's refusal to admit the exhibit.

For the exhibit to be admissible, it must qualify both as an exception to the hearsay rule under Rule 63(13), Utah Rules of Evidence, governing the admission of business entries, and as a proper summary within the meaning of Rule 70(1)(f). Although the summary in question was prepared from books and records kept in the normal course of business, except possibly for the sporadic diary entries, the summary itself was not made in the regular course of business. It was apparently prepared in anticipation of, and preparation for, this lawsuit.

Rule 70(1) provides for the admission of a summary only in limited circumstances, one of which is when the original consists of numerous accounts or other documents which cannot be examined without great loss of time. Defendant concedes that Mrs. Tuft was allowed to testify generally as to the problems with the backhoe and to use the exhibit to refresh her memory concerning specific problems. Some of the repair problems were also reflected on exhibits that were admitted into evidence. Although defendant contends that the exhibits received in evidence did not indicate many of the problems that were noted on phone logs, progress reports, daily diaries, and other documents which were more fully identified on the refused exhibit, there is no contention that these latter documents could not have been examined in court without great loss of time. Exhibit "D–44" appears to be nothing more than a cumulative summary of evidence which was otherwise received and considered by the jury and was itself properly excluded.

## CONFLICT IN INSTRUCTIONS

Defendant contends that Instructions 25 and 29, which state in relevant part that the defendant must prove by a preponderance of the evidence that the backhoe was not merchantable or was defective at the time the lease commenced, are an inaccurate statement of the law and are in direct conflict with Instruction 27, requested by defendant, which states that the "implied warranty of merchantability attaches to the backhoe for each separate monthly term during which time the equipment lease agreement was in effect."

■ There is an inconsistency between Instructions 25 and 29 and Instruction 27. However, in the present case there was only one lease and only one warranty of merchantability. There is no basis for defendant's argument that each month of the lease constituted a separate lease term which gave rise to a separate and new warranty of merchantability. The warranty of merchantability relates to the time of the sale, which in this case would be analogous to the date the lease commenced. White and Summers, Uniform Commercial Code (1972) at 272.

■ The test to determine whether this Court will reverse for error in an instruction is whether in the absence of the alleged error, a more favorable result would have been obtained by the complaining party. *Rowley v. Graven Brothers & Co., Inc.*, 26 Utah 2d 448, 491 P.2d 1209 (1971). The erroneous instruction given to the jury was more favorable to the defendant than the correct rule of law set forth in Instructions 25 and 29, and any prejudice caused thereby was in the defendant's favor and is not ground for reversal.

## WAIVER INSTRUCTION

Defendant's final contention is that the trial court committed prejudicial error in giving Instruction 20, which reads as follows:

Where it is difficult to determine whether a particular act merely sheds light on the meaning of the agreement or represents a waiver of a term of the agreement, the preference is in favor of waiver. Thus even if you find that the plaintiff on occasion did not charge the defendant for certain repairs or gave the defendant credit for downtime, the preferred interpretation of such action is

that the plaintiff waived its claim against the defendant for those repairs and downtime not charged for rather than the interpretation of such action constitutes a course of performance which indicates an intent not to charge the defendant for any downtime or for any repairs.

Defendant argues two points in support of its contention of error: First, that the instruction is in effect a directed verdict on the issue of waiver, and second, that it is an inaccurate statement of the law. We do not agree that the instruction constitutes a directed verdict on the issue of waiver. The instruction did not withhold from the jury consideration whether plaintiffs made some repairs at no cost to defendant and gave defendant credit for downtime. Furthermore, the instruction did not require a finding that such past practices in fact constituted a waiver of plaintiff's contractual rights as opposed to a course of dealing affecting subsequent repair charges.

■ The first sentence of the instruction, which states the rule giving preference to a finding of waiver, is an accurate but incomplete quote from Official Comment No. 3 to § 2–208 of the Uniform Commercial Code, adopted in this State as the Utah Uniform Commercial Code, § 70A–2–208.[2] The second sentence applies that rule of interpretation to the facts of the present case. Although defendant challenged the accuracy of the instruction in taking exception to it, defendant did not specify the error claimed. Defendant's appeal on this issue must therefore fail in light of the rule stated in *Nelson v. Tanner*, 113 Utah 293, 194 P.2d 468 (1948), as follows:

> It is well settled in this jurisdiction that if a part of an instruction is correct, and a part erroneous[,] an exception to the whole of the instruction is not well taken. The party taking the exception must specifically except to that part of the instruction which he deems erroneous. If

he assigns as error the whole of the instruction, his assignment will be held not well taken if any part of the instruction is good. [113 Utah at 296; 194 P.2d at 470.]

The defendant in this appeal has sought review of the evidence received and heard by a jury in the course of a nine-day trial. Defendant would have this Court substitute its judgment for that of the jury and the trial judge who denied defendant's post-trial motions. Our review of the record and the evidence found therein that supports the verdict of the jury leads to the conclusion that the defendant received a full and fair trial and that the jury verdict was based on relevant, competent, and admissible evidence. Defendant has not shown any prejudicial error in the proceedings.

Affirmed. Costs to Respondents.

CROCKETT, C. J., HALL, J., and MAURICE HARDING, Retired District Judge, concur.

MAUGHAN, J., does not participate herein; HARDING, Retired District Judge, sat.

WILKINS, J., does not participate.

---

**2.** The trial court found that the Utah Uniform Commercial Code was applicable to lease

transactions, including the subject lease.